101 So.2d 314

Roger M. MOSS et al.

v.

B. A. COGLE.

2 Div. 379.

Supreme Court of Alabama.

March 6, 1958.

John H. Blanton, John W. Lapsley and Lapsley & Berry, Selma, for appellants.

A. S. Johnson and W. Johnson McCall, Thomasville, for appellee.

LAWSON, Justice.

Roger M. Moss and wife, Theda, filed their bill in the circuit court of Marengo County, in equity, against B. A. Cogle, wherein they sought a declaratory judgment as to whether the respondent had timely and effectively elected to exercise an option to purchase land executed to him by the complainants so as to be binding on the complainants. Cogle filed an answer and a cross bill wherein he prayed for a decree requiring complainants-cross respondents to specifically perform. Moss and wife filed demurrer, a plea of the statute of frauds, and an answer to the cross bill. The demurrer to the cross bill was overruled. After a hearing during which the testimony was taken orally before the trial court a decree was entered wherein it was decreed in part as follows: "It is, therefore, ordered, adjudged and decreed that the parties will perform their respective duties as set out in the option agreement and extension thereof * * *" From that decree Roger M. Moss and wife, to whom we will sometimes refer hereafter as the complainants, have appealed to this court.

The option which with the extension thereof forms the basis of this litigation, appears in the report of the case. The original option was executed by the complainants on February 8, 1956, whereby in consideration of the payment to them of the sum of $500 by Cogle, they gave Cogle, his heirs and assigns, "the exclusive option to purchase, on or before March 19, 1956," 2,913 acres of land, provided "the purchaser [Cogle] shall give the sellers notice, in person or by registered mail, addressed to the sellers, at Lamison, Alabama, before March 19, 1956, of his intention to exercise this option." It was further provided in the option: "Should the purchaser fail to give this notice within said time, this option shall then become null and void."

The extension, which bears date of March 15, 1956, provides in pertinent part as follows:

"Now, Therefore, in consideration of the sum of $100 to them in hand paid by said B. A. Cogle, the receipt whereof is hereby acknowledged, the said Roger M. Moss and Theda B. Moss do hereby extend the time in which said B. A. Cogle may exercise the option to and including the 30th day of April, 1956. If the option be exercised, the said payment of $100 shall be credited to the first installment of the purchase price as set out in said option agreement. All other terms and provisions of the said option shall remain unchanged."

The complainants in the trial below took the position that the only notice which they ever received concerning an attempted exercise of the option was a registered letter which the complainant Theda B. Moss received on April 28, 1956, at Lamison, Alabama. The letter reads as follows:

"Thomasville, Alabama,
"April 27, 1956.

"Mr. and Mrs. Roger H. Moss
Lamison, Alabama.

"Dear Mr. and Mrs. Moss:

"I have decided to exercise the option which you gave me on 2,913 acres of land. This notice is given in accordance with the terms of the original option and the renewal thereof.

"It was my understanding that you would keep a detailed record of the timber cut on the right-of-way, and I shall expect this when you are ready to close.

"I have been informed that timber has been cut on other lands included in the option that you gave me, since said op-

tion was executed. I shall expect you to furnish me a statement showing the amount of timber so cut, and the location of the lands on which the cutting was done. I also want to know the kind of timber and the name of the man who did the cutting. I had no idea that you would permit any cutting other than on the right-of-way which we agreed upon.

"With kind regards, I am,

                "Yours very truly,

"[Signed]     B. A. Cogle

    "By      A. S. Johnson
             "Attorney."

The complainants contended in the trial court the letter set out above was insufficient to constitute an election to exercise the option for these reasons: (1) It came too late. This contention was grounded on the claim that the parties did not intend that Cogle should have longer than March 31, 1956, within which to give notice and "that the date of April 30, 1956, was inserted in said extension agreement instead of March 31, 1956, as a mutual mistake of the parties or as a mistake of the attorney who drafted said agreement for their execution." (2) The letter was not signed by B. A. Cogle personally but by his attorney, who had no written authority to affix Cogle's name to the letter, hence the notice was not given in compliance with the statute of frauds and was, therefore, ineffective. Title 20, § 3, Clause 5, Code 1940. (3) Irrespective of the statute of frauds, supra, the language of the original contract and the extension thereof required that the election to exercise the option be made by Cogle and not by his attorney or other agent. (4) The letter did not constitute an unconditional acceptance but was in such form as to indicate that Cogle would exercise the option only on the condition that complainants make adjustments for timber which had been cut on the land after the date on which the original instrument was executed.

Much of the testimony adduced on the trial below related to the question as to whether Cogle had until April 30, 1956 or only until March 31, 1956, within which to elect to exercise the option. There was some evidence offered by the complainants going to show that they did not intend for the time to be extended beyond March 31, 1956, but the extension agreement provides otherwise and there was ample evidence to justify a finding by the trial court that the extension agreement did in fact reflect the intention of the signers thereof, the complainants. The appellants, the complainants below, do not here insist that the finding of the trial court which is implicit in the decree under review to the effect that the time for exercising the option was legally extended through the 30th day of April, 1956, should be disturbed. In any event, we could not say that such a finding is clearly wrong. As shown above, the witnesses testified orally before the trial judge. Driver v. Johnson, 211 Ala. 184, 100 So. 116; Curb v. Grantham, 212 Ala. 395, 102 So. 619.

Cogle's attorney, Hon. A. S. Johnson, to whom we will sometimes refer hereafter as Johnson, did not have written authority from Cogle to write the letter of April 27, 1956. He acted in accordance with verbal directions given him by Cogle. Appellants say that since Johnson had no written authorization, the letter of April 27, 1956, was ineffective as an election to exercise the option because it was within the bar of the statute of frauds, subdiv. 5, § 3, Title 20, Code 1940, making void every unwritten contract " * * * for the sale of lands, tenements, or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof be paid, and the purchaser be put in possession of the land by the seller."

Since Johnson had no written authority from Cogle, the letter of April 27, 1956, could not have bound Cogle. Linn v. McLean, 85 Ala. 250, 4 So. 777; Neely v. Denton, 260 Ala. 26, 68 So.2d 537. But in

the instant case the parties sought to be bound are the complainants, who have signed the written contract which Cogle seeks to have them perform. It is settled that the agreement, or note, or memorandum required by the statute of frauds need not be subscribed by both parties; and if subscribed by the party to be charged, he cannot deny the execution or validity of the instrument because it is not subscribed by the other party. Heflin v. Milton, 69 Ala. 354; Oliver v. Alabama Gold Life Ins. Co., 82 Ala. 417, 2 So. 445; Vinyard v. Republic Iron & Steel Co., 205 Ala. 269, 87 So. 552. This is made clear in Linn v. McLean, supra, the case upon which complainants rely so heavily. It is said in that case [85 Ala. 250, 4 So. 779]: "And it has been long settled by a great preponderance of authority, that if the contract be so executed as to bind the party who is sought to be charged—the party against whom relief is prayed—it is not material that the party who seeks redress should have so executed the contract as to give a right of action against himself."

■ The general rule covering cases for specific performance is that the contract must be mutual, and that either party be entitled to the equitable remedy of specific performance. However, there are certain well-established exceptions to this general rule. The exception as to unilateral contracts such as that presently involved has been fully recognized and adopted in this state. The case of Moses v. McClain, 82 Ala. 370, 2 So. 741, 742, was for specific performance of the following contract: "For and in consideration of the sum of one dollar in hand paid, I hereby give A. J. Moses an *option* on my lands and improvements situated near Sheffield, and known as my home place, containing 120 acres, more or less, for the sum of eight thousand dollars * * *. (Signed) 'J. W. McClain.' " (Emphasis supplied.) It was contended that since Moses did not bind himself in writing he could not hold McClain bound; that the contract not being

mutually binding, equity would not compel its specific performance. The court decreed as follows: "Mutuality is frequently said to be one of the conditions of a rightful suit for specific performance. The authorities, however, do not carry it to the length contended for. Where the contract is fair, just, and reasonable in all its parts, and the party sought to be charged has so bound himself as to meet the requirements of the statute of frauds, the election of the other contracting party to treat the contract as binding, and to enforce it, meets all the requirements of the rule. * * *" In Davis v. Robert, 89 Ala. 402, 8 So. 114, 115, we said: "It is insisted that the contract is signed only by the defendant, and there is no obligation on the part of the complainant. There is undoubtedly mutuality of obligation, although verbal on the part of complainant. There may be mutuality of contract, although the promise on the part of one is in writing signed by him, and verbal on the part of the other, so that the former may be bound to perform, and the latter may avoid the contract. Oliver v. Alabama Gold Life Ins. Co., 82 Ala. 417, 2 So. 445." See § 53, Title 9, Code 1940; Wilks v. Georgia Pac. R. Co., 79 Ala. 180; Ross v. Parks, 93 Ala. 153, 155, 8 So. 368, 11 L.R.A. 148; Wood v. Lett, 195 Ala. 601, 71 So. 177; Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818; Melton v. Stuart, 213 Ala. 574, 105 So. 659; Eastis v. Beasley, 214 Ala. 651, 108 So. 763; Fuller v. Totten, 222 Ala. 174, 131 So. 435; Asbury v. Cochran, 243 Ala. 281, 9 So.2d 887; Tillman v. Calhoun Lumber Co., 245 Ala. 595, 18 So.2d 561; 8 Thompson on Real Property, § 4635; 91 C.J.S. Vendor & Purchaser § 2; 55 Am. Jur., Vendor and Purchaser, § 43.

■ It appears from the evidence in this case that Johnson dealt with the complainants as Cogle's agent, almost from the very inception of the negotiations which led up to the contract. There can be no doubt of the fact that the complainants were fully aware of Johnson's agency and that his acts in matters affecting the rights of the par-

ties under the option contract and the extension thereof were the acts of Cogle. True, Cogle could not have assigned his right to exercise the option to a third person, for that right was given to him alone, but he had the right to have Johnson, whose agency was known to the complainants, to act in his behalf.

■ An acceptance of an option to be effective must be identical with the offer and not conditional. Asbury v. Cochran, 243 Ala. 281, 9 So.2d 887. The complainants contend that the letter of April 27, 1956, did not constitute an unconditional acceptance of their offer. We think the first paragraph of that letter is as definite and unequivocal as the English language could make it. The remaining portion of the letter relates to matters which arose after the execution of the option and the extension. The evidence shows that a right of way was to be cut through some of the lands involved and the complainants, recognizing the effect of the option, approached Cogle asking for his consent for them to secure the services of someone to cut the timber from the proposed right of way so that the timber might be salvaged. Cogle gave his consent. The evidence shows that the complainants were unable to negotiate for the cutting of the timber from the proposed right of way alone and that they gave permission for timber to be cut from lands adjacent to the proposed right of way, which land was also covered by the option. It is perfectly apparent that the last two paragraphs of the letter of April 27, 1956, show Cogle's desire that he be compensated for the waste committed and that those paragraphs were not in any way intended to qualify the acceptance so clearly set out in the first paragraph of the letter. See Bastian v. United States, 6 Cir., 118 F.2d 777.

In deference to the argument of learned counsel for the complainants, the appellants here, we have up to this point in the opinion treated the letter of April 27, 1956, as being the only notification which the complainants received on or before April 30, 1956, of Cogle's desire to exercise the option.

However, there is evidence offered on behalf of Cogle, the respondent below, going to show that on April 30, 1956, the last day on which the option could be exercised, Moss went to Cogle's home where he was personally informed by Cogle of his election to exercise the option. In that connection the record shows:

"Q. Now, after you told me [Attorney Johnson] to sign this notice to Mr. Moss that you desired to. exercise the option, when was the next time you saw Mr. Moss? A. April 30.

"Q. Where did you see him? A. At my house.

"Q. At your house? A. Yes, sir.

"Q. Did he come out to your place? A. Yes, sir.

"Q. Will you tell the court the conversation you had with Mr. Moss at that time? A. He said he'd received my letter exercising the option and he was wondering if he could buy his farm land back, and I told him no, in the shape my land was in then I couldn't do it. He said, 'I reckon you'd let Marathon have it' and says 'I can understand' and says, 'I'll go right on and make your deed just like the contract calls for.'

"Q. And you told him you wouldn't make any modification of it? A. No, sir, I wouldn't do it. He wanted to buy his farm land back, or some of it. He asked me would I do it * * *

"Mr. Blanton: We object.

"A. I told him I couldn't do it in the shape the land was in then. He told me then, he says, 'I reckon you let Marathon have it' and says 'I can understand how that is,' and says 'I'll go right

on and make you a deed and go right on like the contract calls for.'

"Q. Was anything said at your house on that occasion about the terms set up in the original option? A. Yes, he told me he would want it all cash; that he wouldn't want it in the shape we had it in in the original option; that he would want it all in cash. I told him anyway that would help him and not hurt me I would go along with him."

■ Moss denied that he had any conversation with Cogle on April 30, 1956, or at any time prior to that date wherein Cogle indicated a desire to exercise the option. But here again we have a question of fact which the trial court was much better circumstanced to determine because he heard the witnesses and observed their conduct. Under the presumption which prevails when testimony is taken orally before the trial judge, we could not say that he was not justified in finding from the evidence that the complainants were timely notified by Cogle "in person" of his election to exercise the option. As we have heretofore indicated, a verbal acceptance is sufficient. See 30 A.L.R.2d at page 972.

■ The appellee, Cogle, in his cross bill averred that he was ready and willing to fully perform his part of the contract, as provided in the option, upon compliance by complainants with the terms thereof, and he offered to do equity in the matter. In so doing he has committed himself to the jurisdiction of the court whereby a decree could be rendered and molded so as to protect the rights of all parties and do complete justice between them. See Downing v. Williams, 238 Ala. 551, 191 So. 221.

The decree of the trial court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and MERRILL and COLEMAN, JJ., concur.