694 So.2d 1329 (1997)
NORTHCOM, LTD., et al.
v.
R. E. JAMES, et al.
1941697.
Supreme Court of Alabama.
May 9, 1997.
*1330 Richard W. Whittaker, Enterprise, for appellants.
Joe C. Cassady, Enterprise, for appellees.
C. Lee Reeves and Sandra L. Vinik of Sirote & Permutt, P.C., Birmingham, for amici curiae 1st Franklin Financial Services, Trans Am erica Financial Services, and Alabama Lenders Ass'n.
Laurence D. Vinson, Jr., of Bradley, Arant, Rose & White, L.L.P., Birmingham, for amici curiae Business Council of Alabama and National Federation of Independent Business.
John M. Galese, Birmingham; and Robert A. Huffaker and William H. Webster of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for amici curiae Automobile Dealers' Ass'n of Alabama, Inc., and Alabama Independent Automobile Dealers' Ass'n in support of application for rehearing.

On Application for Rehearing
ALMON, Justice.
The opinion released on January 10, 1997, is withdrawn and the following is substituted as the opinion of the Court.
The defendants Northcom, Ltd., Jerry Oakley, and William R. McDonald III appeal from the denial of their motion to compel arbitration. The issues are whether the arbitration clause in the contract between the parties applies to their present dispute and whether the arbitration clause is unenforceable for lack of mutuality.
Oakley and McDonald are shareholders in Northcom, Ltd., and we will refer to all three appellants collectively as "Northcom." In 1986, Creative Broadcasting Service, Inc., sold two radio stations in Enterprise, Alabama, to Northcom. R.E. James, Roberta Gwenn James, and Kathy James Pittman were the principal owners of Creative Broadcasting, the licensee of the two radio stations, WLHQ-FM and WIRB-AM, at the time of the sale. A covenant not to compete is included within the sales contract and another, in a substantially similar form, is appended to the contract as "Exhibit F." By that covenant, *1331 R.E. James, Roberta Gwenn James, and Kathy James Pittman, as stockholders of the seller, agreed not to compete with Northcom within a 100-mile radius of the stations for a period of six years, in consideration of $250,000, payable in 72 monthly installments. This consideration was in addition to the contract price for the sale of the radio stations.
In May 1994, R.E. James, Roberta Gwenn James, and Pittman (hereinafter "the plaintiffs") brought a breach of contract action, alleging that Northcom had failed to make the monthly installment payments. Northcom moved to compel arbitration, based on an arbitration agreement in the sales contract. The circuit court denied the motion to compel arbitration.
Paragraph 33 of the contract reads:

"Arbitration. In the event of any dispute arising under this agreement, the dispute shall be settled by arbitration under the rules of the American Arbitration Association with Buyer and Seller each to appoint an arbitrator, and the two (2) arbitrators thus appointed to select [a] third arbitrator. The decision of said arbitrators shall be binding on all parties hereto, and may be entered as a final judgment in a court of competent jurisdiction."
We conclude, based on Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), that this contract "involv[es] commerce." First, the 100-mile territorial limitation affects the plaintiffs' ability to engage in the radio business not only in southeast Alabama, but in parts of Florida and Georgia as well. The radio stations broadcast into Florida and Georgia and receive advertising revenue from those states. The operation of these radio stations is subject to federal control in the form of FCC regulations. Therefore, the arbitration clause is subject to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA").
The plaintiffs' first argument in support of the denial of the motion to compel arbitration is that the covenant not to compete is separate from the sales contract and therefore not subject to the arbitration clause in the sales contract. However, that argument cannot succeed, for a number of reasons. Paragraph 5 of the sales contract recites that "the price for the Purchased Assets shall be the sum of One Million One Hundred Thousand Dollars ($1,100,000) payable as follows." Paragraph 5(a) recites a $50,000 escrow deposit, paragraph 5(b) recites an $800,000 payment at the closing of the sale, and paragraph 5(c) recites: "In consideration of an Agreement Not to Compete in the form of Exhibit F attached hereto by and between Buyer and the stockholders of Seller, Buyer shall pay to the stockholders of Seller the sum of Two Hundred Fifty Thousand Dollars ($250,000)." Paragraph 9(a) of the sales contract gives a complete recitation of the covenant not to compete, although in a form different from that of the covenant as it is stated in Exhibit F. Paragraph 9(a) begins, "As an indispensable condition of this sale" (emphasis added), and then recites that "Seller covenants and agrees that neither it nor its ... principals" will for six years operate a radio station within 100 miles of the stations being sold. Finally, paragraph 37 provides that "All Appendices attached to this Agreement shall be deemed part of this Agreement."
The language of these provisions defeats the plaintiffs' argument that the sales contract and the covenant not to compete are separate contracts. The covenant not to compete is clearly part of the sales contract. Moreover, if it were not, it presumably would be rendered void by the operation of Ala. Code 1975, § 8-1-1(a), which voids covenants not to compete, other than as allowed in paragraphs (b) and (c) of that section. Section 8-1-1(b) allows the seller of a business to agree not to compete with the buyer under reasonable time and place limitations.
Because the covenant not to compete is part of the sales contract, this action alleging nonpayment of the consideration for that covenant is a "dispute arising under this agreement." The dispute over payment of the consideration for the covenant not to compete is within the scope of the arbitration provision.
The plaintiffs also argue that the covenant not to compete is invalid for lack of mutuality because, they say, the contract gives Northcom *1332 a right to an action in court while requiring them to arbitrate any claim of breach of the agreement. They quote paragraph 21 of the contract:

"Default. In the event of any default by Seller prior to closing, Buyer shall give notice of such default to Seller in accordance with this Agreement. If such default is not cured by Seller within ten (10) days of receipt of notice of default, Buyer may terminate this Agreement, receive a return of the escrow deposit and interest thereon, and bring an action for damages. Alternatively, Buyer may bring an action for specific performance of this Agreement, and Seller hereby waives the defense that Buyer has an adequate remedy at law. In the event of any default by Buyer prior to closing, Seller shall give notice of such default to Buyer in accordance with this Agreement. If such default is not cured by Buyer within ten (10) days of receipt of notice of default, this Agreement will thereupon terminate. In that event the escrow deposit will be forfeited to Seller as liquidated damages."
Note the absence of a right in the seller to bring an action for damages or for specific performance in the event of default by the buyer. Thus, on the face of the contract, Northcom may bring an action for either legal or equitable relief, at least based on a pre-closing default, while the absence in paragraph 21 of a specific provision allowing Creative Broadcasting or its stockholders to bring such an action would make any such action subject to the arbitration clause in paragraph 33.
More pertinently, because relating directly to the claim at issue here, the covenant not to compete itself gives Northcom a right to bring an action in court. Paragraph 9(a) includes the following:
"In view of the irreparable damages which might result from the breach of this agreement and the Seller's and its principals contained hereinabove [sic], Seller and its principals agree that Buyer, its successors and assigns, may obtain injunctive relief for any violation of those covenants and agreements imposed upon it or its principals herein as well as recovery of any monetary damages or any other remedy which may be allowed by law, and the use of injunctive relief shall not waive any claim for damages or any other remedy."

(Emphasis added.) No such provision applies to the failure of Northcom to make the monthly payments that are the consideration for the covenant not to compete.
Thus, in the two most significant circumstances likely to cause Northcom to seek relief against Creative Broadcasting or its stockholderstheir failure or refusal to convey the radio stations as agreed or their breach of the agreement not to compete after having conveyed itthe contract gives Northcom a right to bring a civil action for either legal or equitable relief. No such right is given to Creative Broadcasting or its shareholders in the two most significant circumstances likely to cause them to seek relief against NorthcomNorthcom's failure or refusal to purchase the radio stations as agreed or its failure, after having bought the stations, to pay for the stockholders' refraining from competing with it.
In support of their argument that such a lack of mutuality will invalidate an arbitration agreement, the plaintiffs cite Matterhorn, Inc. v. NCR Corp., 763 F.2d 866 (7th Cir.1985). Indeed, that opinion states: "[A] challenge based on the lack of mutuality of the arbitration clause would be for the court. Hull v. Norcom, Inc., 750 F.2d 1547, 1549-50 (11th Cir.1985)."[1] 763 F.2d at 868.
In its original opinion, this Court relied largely on Hull v. Norcom, Inc., 750 F.2d 1547 (11th Cir.1985), and held that the arbitration clause here is unenforceable because of lack of mutuality. Several pertinent objections *1333 to that holding are made in the application for rehearing, the supporting brief, and the brief of the amici curiae.
The principal objection is that Hull v. Norcom, a diversity action, applied New York law, but that the Court of Appeals of New York, in Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133, 535 N.E.2d 643, 538 N.Y.S.2d 513 (1989), overruled the underlying New York cases four years after the Eleventh Circuit Court of Appeals had decided Hull v. Norcom. Because Sablosky does not cite Hull v. Norcom, we did not discover Sablosky in attempting to ascertain the continuing validity of Hull v. Norcom.
We did not purport in the original opinion to adopt New York law; rather, we cited Hull v. Norcom for the Eleventh Circuit's reasoning, which we found convincing, on the question whether an arbitration "agreement" by which only one party is bound may be specifically enforced. The dissenting Justices questioned whether the majority was confusing "mutuality of consideration" with "mutuality of remedy," but it is clear that the Eleventh Circuit and the New York courts were applying the doctrine of mutuality of obligation, which regards the question of consideration, not the doctrine of mutuality of remedy, which pertains to specific performance. Nevertheless, the disapproval by the Court of Appeals of New York of the opinions by the New York Appellate Division requires us to consider afresh the questions of mutuality of obligation and mutuality of remedy as they pertain to specific enforcement of arbitration clauses that are not mutually and coextensively binding.

Preservation of the Issue
Before we reembark upon that inquiry, however, we must address another objection raised in the application for rehearing. Northcom asserts that this issue was not presented to the circuit court and so should not be addressed on appeal. We have again studied the record, and it is true that there is no mention therein of the question of mutuality; the plaintiffs' only written opposition to the defendants' motions[2] to compel arbitration stated simply:
"1. There is no provision for binding arbitration under the Laws and Statutes of the State of Alabama.
"2. No Federal Arbitration Statute is applicable to this case."
On application for rehearing, Northcom cites Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260 (Ala.1995), for the proposition that "failure to raise an issue in the trial court will prohibit consideration of that issue raised for the first time on appeal." In Beavers, this Court declined to reverse a circuit court's denial of a motion to compel arbitration where Jim Burke Automotive had neither alleged nor made any showing in support of its motion to compel arbitration that the contract involved interstate commerce. Northcom argues that a comparison of this case with Beavers shows that this Court is disfavoring arbitration, in violation of the prohibition of such disfavor by Doctor's Associates, Inc. v. Casarotto, 517 U.S. ___, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). We respectfully disagree.
Here, the lack of mutuality is apparent on the face of the contract, and, if the doctrine of mutuality of obligation or the doctrine of mutuality of remedy supports a refusal to enforce such an arbitration clause, that lack of mutuality supports an affirmance of the circuit court's denial of Northcom's motion. Thus, Beavers is distinguishable on two grounds: First, the record in Beavers contained no evidence of a critical fact, whereas the critical fact here is apparent on the record. Northcom's assertion that the question of mutuality is not preserved depends on its assertion that the plaintiffs did not argue that question in opposition to the motion to compel arbitration. We assume for purposes of discussion that the plaintiffs did not make such an argument in an untranscribed hearing on the motion, because the second ground for distinguishing Beavers makes it unimportant whether the plaintiffs made such an argument.
*1334 The second ground of distinction is that the appellant in Beavers needed the absent fact for a reversal, whereas here the appellees/plaintiffs may rely on the rule that a judgment may be affirmed if it is correct even if for reasons other than those relied upon by the lower court and the rule that an appellate court takes cognizance of the law applicable to the facts of record. See, e.g., Marvin's, Inc. v. Robertson, 608 So.2d 391, 393 (Ala.1992) ("In reviewing the judgment of a trial court, this Court will not presume error and will affirm the trial court's judgment if it is supported by any valid legal ground"); Yarbrough v. C & S Family Credit, Inc., 595 So.2d 880, 881 (Ala.1992) ("If there is any ground on which the trial court could have entered the judgment, we must affirm it"), and other cases collected at 2 West's Alabama Digest 2d, "Appeal & Error," Key nos. 851.1, 854(1), 854(2) (1993).
Thus, a question of law is presented, and the record adequately presents the question. There is no discrimination in these principles of review against either arbitration or the appellants, because the appellants are free to make their arguments on the relevant points of law, as they and the amici have ably done. The plaintiffs have not filed a brief in opposition to the application for rehearing. The following, therefore, expresses our conclusions after due study of the briefs and the pertinent law as we have found it.
The questions of mutuality of obligation and mutuality of remedy are analytically distinct, but in the case of arbitration contracts they come to the same result. Generally, if there is no mutuality of obligation, there is no consideration flowing in one direction and thus there is no contract. All the cases we have seen on mutuality of remedy pertain to the remedy of specific performance, and the rule most broadly stated is that if there is no mutuality of remedy, the contract cannot be specifically enforced. If a pre-dispute arbitration agreement cannot be specifically enforced, it effectively is no contract, so a lack of mutuality of remedy is tantamount to a lack of mutuality of obligation. We shall consider whether either of these theories supports the circuit court's holding.

Mutuality of Obligation
Until the Court of Appeals of New York decided Sablosky, New York applied the rule that an arbitration agreement was enforceable only if there were mutual promises to arbitrate serving as consideration for each other.
"The clause pursuant to which Riegel sought to institute arbitration proceedings is not a contract for arbitration of controversies but rather a grant to Hull of a unilateral right to arbitrate. Neither party is required to arbitrate; Hull because the agreement gives it the option for arbitrating or litigating; Riegel because the agreement is not mutually binding and enforceable."

Hull Dye & Print Works, Inc. v. Riegel Textile Corp., 37 A.D.2d 946, 946, 325 N.Y.S.2d 782, 783 (1971) (emphasis added; citations omitted).
"Reading the arbitration provision as it appears in the contract it is evident that the parties did not mutually promise to resolve all controversies by arbitration. The power to invoke arbitration existed only at the option of the seller. No such right reposed in the buyer. It should be clearly manifest that the parties adopt arbitration as their exclusive remedy before any party should be forced into arbitration. Here the agreement to arbitrate was not mutually binding for there was no reciprocal obligation upon the seller to do so."
Kaye Knitting Mills v. Prime Yarn Co., 37 A.D.2d 951, 951, 326 N.Y.S.2d 361, 363 (1971) (citation omitted).
There is no Alabama law on the question whether there must be mutuality of obligation in an arbitration agreement because the Alabama Legislature has declared that "[a]n agreement to submit a controversy to arbitration" may not be specifically enforced (and, thus, may not be enforced at all). Ala. Code 1975, § 8-1-41(3). Moreover, Section 10 of the Alabama Constitution of 1901 provides: "[N]o person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party." Nevertheless, *1335 the United States Supreme Court in York International v. Alabama Oxygen Co., 465 U.S. 1016, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984), vacated the judgment of this Court setting aside a stay pending arbitration and remanded the cause for further consideration in light of Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); see Ex parte Alabama Oxygen Co., 433 So.2d 1158 (Ala.1983), and 452 So.2d 860 (Ala.1984). By those holdings, and later ones, § 8-1-41(3) has been held to be preempted by the FAA in cases of "contract[s] evidencing a transaction involving [interstate] commerce," 9 U.S.C. § 2. Since then, this Court has not been presented with a case raising a question of mutuality of obligation in arbitration agreements, until now.
There is, however, authority in Alabama for the proposition that "[a] contract, lacking in mutuality, is unenforceable." Marcrum v. Embry, 291 Ala. 400, 403, 282 So.2d 49, 51 (1973); Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953); Hunt v. Hammonds, 257 Ala. 586, 60 So.2d 355 (1952); Sherrill v. Alabama Appliance Co., 240 Ala. 46, 197 So. 1 (1940). As Chief Justice Anderson stated the principle, "It is undoubtedly the law that a unilateral contract, that is, one which is binding on one party and not the other, will not authorize an action for the breach of same by the party not bound against the one that is." Perfection Mattress & Spring Co. v. Dupree, 216 Ala. 303, 307, 113 So. 74, 77 (1927).
The New York courts previously held that an arbitration clause essentially required its own considerationthe mutual agreements of the parties to arbitrate. However, the modern rule is that, if the contract as a whole is supported by consideration, a lack of complete mutuality of obligation in some aspect is not fatal to the contract. The remainder of this Court's statement of the rule in Marcrum v. Embry demonstrates this point:
"A contract, lacking in mutuality, is unenforceable, because there is an absence of consideration moving, from one party to the other, ... but when the promise of each party is legally sufficient consideration for the other's promise, there is no lack of mutuality....
"....
"... [M]utuality in a contract does not mean equal rights under the contract, or that each party is entitled to the same rights or covenants under the contract. So long as there is a valuable consideration moving from one side to the other, or there are binding promises on the part of each party to the other, there is adequate consideration for a valid contract."
291 Ala. at 403, 282 So.2d at 51.
In overruling the rule announced in Hull Dye & Print Works and in Kaye Knitting Mills, the New York Court of Appeals used the term "mutuality of remedy," but it is clear that the principal concept it relied on was that of mutuality of obligation[3]:
"Mutuality of remedy is not required in arbitration contracts. If there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement. Our holding is consistent with decisions which have repudiated the necessity for mutuality of remedy in contracts [citing cases and authorities pertaining to mutuality of remedy, i.e., the availability of specific performance]. Since it is settled that the validity of an arbitration agreement is to be determined by the law applicable to contracts generally [citation omitted], there is no reason for a different mutuality rule in arbitration cases. Moreover, recognition that mutuality of remedy is not required in arbitration is logically consistent with our recent statement in Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, [464,] 457 N.Y.S.2d 193, 443 N.E.2d 441 that `while coextensive promises may constitute consideration for each other, "mutuality", in the sense of requiring such reciprocity, is not necessary when a promisor receives other valid consideration.'"

Sablosky, 73 N.Y.2d at 137, 535 N.E.2d at 646, 538 N.Y.S.2d at 516.
*1336 Upon further consideration of this question on rehearing, we hold that the arbitration clause in this contract should not be invalidated for lack of mutuality of obligation, because there is consideration for the contract as a whole flowing from each party to the other. The arbitration clause is not a separate contract that must be independently supported by consideration; it is simply one provision in a larger contract. The circuit court's denial of arbitration cannot be sustained on the doctrine of mutuality of obligation.

Mutuality of Remedy
The doctrine of mutuality of remedy originally held that a party to a contract may not obtain specific performance of the other party's obligation under the contract if the party seeking specific performance cannot be compelled to specifically perform. This Court, in a 1931 exposition of the doctrine, relied largely on Pomeroy's Equity Jurisprudence:
"Appellant further invokes the doctrine of mutuality of equitable remedy. All that this doctrine (of mutuality of equitable remedy) requires is that the situation of the parties be such that the court, in decreeing specific performance by the respondent, will have the physical power and ability to compel the complainant to perform his obligation and not be involved in complicated business affairs or operations. That is to say, `In equity, however, where it is sought to secure a decree for the specific performance of a contract, the right to such relief depends upon the existence in the defendant of the right to similar relief. Generally, if this remedy is not mutual, the court, in the exercise of its discretionary powers, will refuse to assume jurisdiction to grant relief of this character to either party....' 333 Ill. 494, 165 N.E. 131, 65 A.L.R. page 45.
"....
"In his work on Equity Jurisprudence, Mr. Pomeroy noted the confusion resulting from misapprehension of the meaning of the doctrine of mutuality and expounded that doctrine in unambiguous terms (volume 5, §§ 2191 to 2194); and in section 2191, he makes the following statement in his notes: `The rule as to mutuality is not a rule of reciprocitythat relief will be denied unless defendant, if he had seen fit to sue instead of the plaintiff suing, would have succeeded in his suit; but, so far as it can be justified at all, is merely designed to secure performance on the plaintiff's part of his executory promise by the one decree in equity.' ...
"And thus he states the rule (5 Pom. Eq. Jur. pp. 4923, 4924, § 2191): "`Equity will not compel specific performance by a defendant, if after performance the common-law remedy of damages would be his sole security for the performance of the plaintiff's side of the contract." 3 Columbia Law Rev. 1, by Professor J.B. Ames. "The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches on plaintiff's part." This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality.'"
General Securities Corp. v. Welton, 223 Ala. 299, 305-06, 135 So. 329, 334-35 (1931).
The Court similarly applied a limited version of the doctrine of mutuality of remedy in Pierce v. Watson, 252 Ala. 15, 39 So.2d 220 (1949). After discussing criticisms of and limitations on the rule, the Court stated:
"We think it may be said as a general proposition that the rule of mutuality is satisfied if the decree of specific performance operates effectively against both parties and gives each the benefit of a mutual obligation."
252 Ala. at 18, 39 So.2d at 222.
This version of the doctrine of mutuality of remedy is essentially the one advocated by Professor Corbin:
"The primary rule that the decisions will now sustain, in lieu of the broken-down requirement of mutuality of remedy, is this: the court may properly refuse specific enforcement if some substantial part of the agreed exchange for the defendant's performance has not yet been rendered *1337 and its performance is not sufficiently assured to the satisfaction of the court."
5A Corbin on Contracts, § 1183 (1964). Corbin discusses the subject in detail in §§ 1178 through 1204. See also 11 Williston on Contracts, §§ 1433-1440 (3d ed.1968).
Having considered these authorities, we conclude that the rule of mutuality of remedy, while severely limited, is not entirely obsolete. It may still be applied to disallow specific performance where the party who seeks specific performance will thereafter have an ongoing obligation to the other party but the other party will not have an adequate remedy for securing the performance of that obligation.
How does this apply in the context of arbitration? To the extent that the question concerns specific performance, it is certainly applicable, because a motion or an action to compel arbitration seeks specific performance of an arbitration clause in a contract. Indeed, Alabama's policy against arbitration is stated in the Code article on specific performance, in a section listing contracts that cannot be specifically enforced. Title 8, Chapter 1, Article 3, § 8-1-41(3), Ala.Code 1975.
The specific question arises when one party ("A") is bound to arbitrate but the other ("B") is not. B seeks to compel arbitration of a claim made by A. After such an arbitration, another dispute may potentially arise, and B may file an action against A. If such a later dispute arises, A will not be able to take the claim to arbitration.[4] Is there such a lack of mutuality of remedy here as to justify denying B`s motion to compel arbitration of the first claim?
This question is peculiar because the remedy to be obtained by specific performance is not performance under the contract, but only access to a remedyarbitration versus adjudicationfor the alleged breach of contract. We can, however, envision a situation in which a court, addressing a motion to compel arbitration, may invoke principles of equity to deny the motion. Such a situation could arise where a consumer contract is one of adhesion, and the party in the superior bargaining position has given itself a choice of arbitration or litigation, but has reserved a right to compel the weaker party to submit to arbitration.
Indeed, such a rationale was expressed in one of the New York cases decided before Sablosky:
"[W]e commence with a basic premise that arbitration is consensual in nature. The fundamental assumption of arbitration is that it may be invoked as an alternative to the settlement of disputes through the judicial process `solely by reason of an exercise of choice of (all) parties'....
"Such agreement to arbitrate has been held to be enforceable if it had been openly and fairly entered into. In determining whether plaintiff in this case entered into such agreement, the principles governing enforcement of contracts of adhesion must be considered. Adhesion contracts refer to a standardized contract form offered to consumers of goods and services essentially on a `take it or leave it' basis, without affording the consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing to the form of the contract....
"....
"The defendant doctor is a college, medical and dental school graduate. The nurses employed by him are graduates of nursing schools. Counterposed to these educated people is the plaintiff who attended school but completed an eleventh grade education. To contrast this limited educational background against that of a professional doctor and his nursing staff could be unreasonable and unconscionable.
"The doctrine of unconscionability is not new to American jurisprudence. (See, e.g., Scott v. United States, 79 U.S. 443, 12 Wall. 443, 20 L.Ed. 438 (1870); Hume v. United States, 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889)).
"....

*1338 "An arbitration agreement will not be enforced unless it is `mutually binding'. Where an arbitration clause is not mutually binding, but rather grants one party a unilateral right to arbitrate, the court will not enforce such agreement.... The agreement to arbitrate in this matter purports to be an exchange of promises to arbitrate with each promise serving as consideration for the other. In return for the patient's consent to arbitrate all claims arising out of the medical relationship, the doctor agreed to arbitrate all claims except claims of money due for services rendered. In a doctor-patient relationship, the only possible claim the doctor would have is a claim of money for services rendered. This claim is specifically reserved by the doctor and excluded from the agreement.
"....
"The court finds the contract was unconscionable and unilateral. The motion to compel arbitration and dismiss the complaint is denied."
Miner v. Walden, 101 Misc.2d 814, 816-19, 422 N.Y.S.2d 335, 337-40 (Sup.Ct.1979). Of course, the portion of this reasoning that requires mutuality of obligation was overruled by Sablosky, but the remaining portionsstating that arbitration is "consensual in nature," that in a contract of adhesion consent may not be truly present, and that in such a situation the doctrine of unconscionability may applywe find to be persuasive on the question of mutuality of remedy. Those concepts are applicable as general principles of law, not principles specific to and disfavoring arbitration.
As well as expressing a strong policy against specific enforcement of arbitration contracts, the Alabama legislature has also adopted a strong version of the doctrine of mutuality of remedy, also found in the Code article on specific performance:
"Neither party to an obligation can be compelled specifically to perform it unless the other party thereto has performed or is compelled specifically to perform everything to which the former is entitled under the same obligation, either completely or nearly so, with full compensation for any want of entire performance."
Ala.Code 1975, § 8-1-43 (emphasis added). The few cases citing this section have applied the judicially adopted limitations on and exceptions to the doctrine of mutuality of remedy. Kennedy v. Herring, 270 Ala. 73, 116 So.2d 596 (1959); Moss v. Cogle, 267 Ala. 208, 101 So.2d 314 (1958); Downing v. Williams, 238 Ala. 551, 191 So. 221 (1939).[5] Nevertheless, the Code section still stands in the books and in strong language expresses a policy favoring mutuality of remedy.
Therefore, we hold that, in a case involving a contract of adhesion, if it is not shown that the party in an inferior bargaining position had a meaningful choice of agreeing to arbitration or not, and if the superior party has reserved to itself the choice of arbitration or litigation, a court may deny the superior party's motion to compel arbitration based on the doctrines of mutuality of remedy and unconscionability. We express this principle specifically as to arbitration only because that is the issue presented here. The principle is equally true as to any unconscionable term of a contract of adhesion.[6] Cf. Doctor's Associates, Inc. v. Casarotto, supra. The element of unconscionability in the context of an arbitration clause is supplied by the fact that, by agreeing to arbitrate, a party waives his right to "a remedy *1339 by due process of law," Ala. Const.1901, § 13, and his "right of trial by jury," Ala. Const.1901, § 11, and U.S. Const. Amend. VII. To allow such a waiver in an adhesion contract without a showing that it was voluntarily made might well be unconscionable. Moreover, a court in this state that is asked to enforce an arbitration clause is asked to rule contrary to the prohibition in Section 10 of our Constitution "That no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party," Ala. Const.1901, § 10. To enter such a ruling, a state court is entitled to require a clear showing of preemption of state law under the Supremacy Clause of the United States Constitution and a clear showing that enforcement of the arbitration clause would not be unconscionable.
As shown above, the contract requires Creative Broadcasting and its stockholders to submit any disputes they have with Northcom to arbitration, but allows Northcom in the principal situations in which it might seek reliefa failure by Creative Broadcasting to convey as agreed or a breach by its stockholders of the covenant not to competeto bring an action for equitable relief or damages. However, there is no indication that this contract is a contract of adhesion. On the contrary, both the sellers and the buyers were represented by counsel and at least had the opportunity to negotiate the terms of the contract. Under these circumstances, there is not such a showing of lack of voluntary agreement to support a holding of unconscionability of the arbitration clause based on the lack of mutuality of remedy.
For the reasons stated, the denial of the motion to compel arbitration is reversed, and the cause is remanded.
OPINION OF JANUARY 10, 1997, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; REVERSED AND REMANDED.
SHORES, J., concurs.
HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., concur in the result.
HOOPER, Chief Justice (concurring in the result).
I concur in the result, but I respectfully disagree with some of the rationale of the main opinion. As I noted in my dissent to the original opinion in this case, the elements of a contract are agreement, consideration, two or more contracting parties, a legal object, and capacity. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 303 (Ala.1986). The main opinion now concludes that while the doctrine of mutuality of remedy does not apply to this case, it may apply to a contract of adhesion. However, even in a contract of adhesion, no rule of law requires that the remedies for a breach of contract be the same for both parties. This requirement of mutuality of remedies with respect to adhesion contracts creates an entirely new animal in Alabama contract law. As I have said before, this Court should be wary of creating new species.
The main opinion cites General Securities Corp. v. Welton, 223 Ala. 299, 135 So. 329 (1931), for the proposition that this Court has previously adopted the doctrine of mutuality of remedy. In that case the plaintiff sought specific performance of a sale of corporate stock. The defendant argued that the plaintiff did not have a remedy in equityspecific performancebecause he had an adequate remedy at law. This Court stated:
"In determining the propriety of such a decree [ordering specific performance], the inadequacy of a legal remedy is a primary consideration. If the character of the property be such that the loss of delivery per the contract will not be fairly compensated in damages, based upon an estimate of its market value, the general rule is that relief may be had in a court of equity."
223 Ala. at 301, 135 So. at 330.
At that time courts of law and courts of equity were separate courts in Alabama. Today law and equity have been combined in Alabama's Unified Judicial System. See Rule 2, Ala. R. Civ. P. The usual remedy at law was and is money damages. Equity allows for a greater variety of remedies. For example, in General Securities, the corporate stock involved was that of a private *1340 corporation. The Court stated that normally the remedy for breach of an agreement to sell stock was money damages. However, the Court added that if the stock has no recognized market value, is not purchasable in the market, or has a value that is not settled but is contingent upon the future workings of the corporation, then the equitable remedy of specific performance may be appropriate. In other words, when the remedy at law is inadequate to make the complaining party truly whole, specific performance may be necessary. Specific performance is an equitable remedy that alleviates the problem of lack of mutuality of remedy; it is not the source of the problem.
The Court in General Securities quoted Pomeroy:
"`"Equity will not compel specific performance by a defendant, if after performance the common-law remedy of damages would be his sole security for the performance of the plaintiff's side of the contract." 3 Columbia Law Rev. 1, by Professor J.B. Ames. "The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches on plaintiff's part." This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality.'"
223 Ala. at 306, 135 So. at 335.
Let us compare that application of the doctrine to the case at bar. Under the agreement, Northcom has the option of demanding arbitration or filing a claim in court. Creative Broadcasting is limited to arbitration for a resolution of any dispute Creative Broadcasting has with Northcom. Creative Broadcasting agreed not to compete with Northcom within a certain geographical area and for a certain time. Creative Broadcasting filed a complaint against Northcom, alleging that it had failed to make the monthly installment payments, and Northcom filed a motion to compel arbitration, which the trial court denied. There are several questions we need to ask before this Court says that the doctrine of mutuality of remedy applies.
One, is arbitration a remedy? No. Northcom in this case did not ask the trial court for specific performance of the sale agreement as to the default in payment by Northcom. The final remedy desired by either party is not arbitration. Northcom asked the trial court to enforce a choice-of-forum clause in the sale agreement. Northcom's chosen forum is an arbitration panel. That is why Creative Broadcasting suffers no injustice if there exists a lack of mutuality; the arbitration clause has to do with the choice of forum, not the final remedy.
Two, is the remedy at law inadequate? In this case that question is inapposite. It points out the problem created by the main opinion's attempt to apply the doctrine of mutuality of remedy to arbitration clauses. The question whether the remedy at law is inadequate is the fundamental question a court must answer in deciding whether to apply an equitable remedy. See General Securities, supra; see also Kennedy v. Herring, 270 Ala. 73, 116 So.2d 596 (1958); Moss v. Cogle, 267 Ala. 208, 101 So.2d 314 (1958); Downing v. Williams, 238 Ala. 551, 191 So. 221 (1939) (each of these cases cited in the main opinion upheld the enforcement of specific performance). Northcom seeks specific enforcement of a clause of the contract, not because the remedy at law is inadequate, but because the clause grants Northcom a choice. The question whether the remedy at law is inadequate is completely irrelevant. In fact, Northcom claims that it may in the future need relief from a court of law because an arbitrator is unable to enforce injunctive relief, a remedy that Northcom would need in the event Creative Broadcasting violated the noncompetition agreement and began operating a similar business. Northcom points out in its brief that only Creative Broadcasting agreed not to compete and that it was reasonable for Northcom to require specific enforcement of that provision. In contrast, Northcom, as the buyer, agreed only to pay money to purchase the radio station, so there was no need for Creative Broadcasting to seek injunctive relief by going to court.
Enforcing the arbitration agreement would not end the case. The parties would go before an arbitrator, who would determine an *1341 appropriate final remedy. Northcom is not seeking a final remedy in equity by requesting arbitration. An arbitrator does not have the authority to enforce a noncompetition agreement. If Northcom needed a remedy in equity, it would have remained in court, where Creative Broadcasting originally filed its complaint. Therefore, the main opinion's analysis of mutuality of remedy in the context of arbitration mixes apples and oranges. Ironically, it is Northcom that desires arbitration in this case. Northcom is the party that claims it would have an inadequate remedy through arbitration if it could not choose to go to court.
The reasoning of the main opinion actually would turn the doctrine of mutuality of remedy on its head. Instead of ensuring that parties have all the remedies they need to reach a mutually acceptable resolution of their conflict (which appears to be the philosophy underlying the doctrine of mutuality of remedy), the main opinion would cut off an equitable method of ultimately reaching that resolution. The doctrine of mutuality of remedy was meant to expand the possibilities of remedy for the parties; it was not meant to restrict them. In this case, both parties already have the ability to obtain specific enforcement of the arbitration provision. The main opinion says that, in the case of an adhesion contract, the court should take away the parties' right to this equitable remedy. That is what Alabama precedent says mutuality of remedy is all aboutmaking sure that both parties can obtain the equitable remedy, if one of them demands it.
Even if the doctrine were not an anachronism, and even if it could be logically applied to an arbitration provision, the main opinion attempts to apply it much too broadly in this case. In Pierce v. Watson, 252 Ala. 15, 39 So.2d at 220 (1949), this Court qualified the doctrine:
"`It is now the generally accepted rule of both courts and text writers that in the absence of any statutory limitation, specific performance of a contract at the instance of one party will not be denied merely because of the fact that remedy by way of specific performance is not available to the party against whom the enforcement of the contract is sought.' 49 Am.Jur., Specific Performance, p. 50, § 36."
252 Ala. at 17, 39 So.2d at 221. The Pierce Court explained the doctrine:
"`All that this doctrine (of mutuality of equitable remedy) requires is that the situation of the parties be such that the court, in decreeing specific performance by the respondent, will have the physical power and ability to compel the complainant to perform his obligation and not be involved in complicated or extended business affairs or operations.'"
252 Ala. at 18, 39 So.2d at 221-22, quoting General Securities, supra, 223 Ala. at 305,135 So. at 334.
If this analysis sounds confusing, it is because the doctrine of mutuality of remedy was never meant to apply to the situation that exists in this casewhere a party to an agreement that allows a choice of forum is seeking to enforce the agreement. No one has been treated unjustly. No one has claimed that somehow an arbitrator's decision will leave them without an adequate remedy. Yet, from somewhere in the past, the main opinion calls up this doctrine, which does not apply anymore and which certainly does not apply to arbitration agreements, and uses it to say that perhaps at some time in the future there will be an adhesion contract to which it will apply.
The only explanation I can decipher for the reasoning of the main opinion is an unfounded assumption that arbitration always and inevitably results in an inadequate remedy for a party that does not want to arbitrate. The main opinion states that the doctrine of mutuality of remedy originated in equity. Equity courts originated as the ecclesiastical courts of the Church of England. Hundreds of years ago, there were many forums for the resolution of disputes within the legal tradition of EnglandKing's Court, Court of Common Pleas, Chancery Court, Lord's Court, Merchants' Court, Town Court, Manorial Court, etc. Historically, there have been many ways for people to resolve their disputes with each other. Perhaps arbitration is an example of a new and growing diversity of means for resolving disputes, means that may prove advantageous to society. I hope *1342 this Court does not think that it and the other state-certified tribunals of Alabama are the only means by which the people of this State can resolve their disputes. Such a position would deny the variety of ways in which people have solved their disputes throughout history, including the history behind our own common law system. If it were true that only circuit court judges could resolve disputes, then we would be able to say with Job's "friends": "We are the people, and wisdom shall die with us."
Based on the above, I concur in the result.
MADDOX, Justice (concurring in the result).
In view of the result reached on rehearing, I concur.
The main opinion states: "[W]e hold that, in a case involving a contract of adhesion, if it is not shown that the party in an inferior bargaining position had a meaningful choice of agreeing to arbitration or not, and if the superior party has reserved to itself the choice of arbitration or litigation, a court may deny the superior party's motion to compel arbitration based on the doctrines of mutuality of remedy and unconscionability." 694 So.2d at 1338.
I must point out, however, that the question the main opinion was addressing when it said thiswhether a so-called contract of adhesion can be enforced so as to compel arbitrationis not presented in this case. In my opinion, the statements in the main opinion on that question are dicta. Because of this, I concur in the result only.
SEE, J., concurs.
NOTES
[1] This statement is made as a contrast to the point that a claim of fraud in the inducement of the whole contract would be for the arbitrator, as held in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The discussion in Matterhorn of the principles of Prima Paint seems to be inconsistent with the more recent case of First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). We note also that Judge Posner, in Matterhorn, points out some of the same incongruities between §§ 3 and 4 of the FAA that we addressed in Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala.1995).
[2] Northcom, Oakley, and McDonald filed separate motions to compel arbitration. We note this fact for precision, but hereinafter will return to the opinion's collective reference to the defendants as "Northcom" and to the motions as a single motion.
[3] This confusion of terminology is quite understandable, because, as we discuss more fully below, in the context of arbitration clauses, the nonmutual obligation pertains not to performance of the contract, but to the right to seek a nonjudicial remedy.
[4] The temporal order is insignificant; the same problem exists if B`s claim may arise first and there is a potential for a later claim by A as to which B might insist on arbitration.
[5] The Code (Lawyers Co-Op) annotations also show Old Republic Ins. Co. v. Lanier, 644 So.2d 1258 (Ala.1994), as citing § 8-1-43, but this is a mistake; that opinion cites only § 8-1-41(3).
[6] For example, this Court has held that an agreement whereby an indemnitor agrees to indemnify the indemnitee against the indemnitee's own negligence may be enforced "if the contract clearly indicates an intention to indemnify against the consequences of the indemnitee's negligence, and such provision was clearly understood by the indemnitor, and there is not shown to be evidence of a disproportionate bargaining position in favor of the indemnitee." Industrial Tile, Inc. v. Stewart, 388 So.2d 171, 175 (Ala.1980) (emphasis added). "[I]f the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld." Industrial Tile, 388 So.2d at 176 (emphasis added).