116 So.2d 596

T. R. KENNEDY et ux.

v.

James L. HERRING.

6 Div. 455.

Supreme Court of Alabama.

Dec. 10, 1959.

Davis & Zeanah, Tuscaloosa, for appellants.

C. W. Gross, Tuscaloosa, for appellee.

**GOODWYN, Justice.**

Appeal by respondents from a decree of the circuit court of Tuscaloosa County, in equity, overruling their demurrer to appellee's bill of complaint seeking specific performance of an option to purchase real estate.

In short, appellants insist that "the purported option is so vague, indefinite and uncertain as to be unenforceable" and that it "has not been accepted by the appellee." We are unable to agree with either contention. Our conclusion is that the demurrer was properly overruled.

The option agreement was duly executed by the parties under date of February 14, 1959. To the extent here material, it provides as follows:

"Whereas, the parties of the first part [appellants] are the owners of the following described real property located in Tuscaloosa County, Alabama: [We omit the description. No question is raised as to its sufficiency]. And, Whereas, the parties of the first part desire to sell the said property to the party of the second part [appellee], and the party of the second part desires to take an option to purchase the above described property, the following

agreements are made and entered into by and between the parties:

"The parties of the first part agree to sell the above described property for the total sum of Nine Thousand Dollars ($9,000.00). The party of the second part is paying One Hundred Dollars ($100.00), the receipt of which is hereby acknowledged, for an option on the property, the option to expire at 12:00 o'clock noon on the 14th day of April, 1959. If the party of the second part desires to complete the purchase of the property he must notify the said T. R. Kennedy and the said T. R. Kennedy will lend an abstract of title one time. If the title is found to be merchantable, the party of the second part will forfeit his one hundred dollars unless he purchases the property and pays the balance of eighty nine hundred dollars in cash. The abstract must be returned within fifteen days after the said T. R. Kennedy lends the abstract. If the title is found to be not merchantable, the one hundred dollars will be returned.

"The ad valorem taxes which become due October 1st, 1959, will be pro-rated as of the date the deed is delivered."

The bill of complaint was filed on April 8, 1959, within the time (by April 14, 1959) allowed for exercise of the option by complainant.

It is alleged in the bill that "respondents loaned to the complainant their abstract of title, but agreed to lend it only the one time, and the abstract was not brought down to date"; that "complainant, depending upon the validity of the agreement, employed the Tuscaloosa Title Company, Inc., to prepare for him an abstract of title to the property"; that "he had the title examined"; that "his attorney approved the title, and the respondents were notified that the complainant was ready to complete the transaction, buy the property, and pay the balance of Eighty-nine Hundred and no/100 Dollars ($8900.00) in cash";

that complainant "is ready, willing and able to pay" the said balance; that "he made a legal tender of Eighty-nine Hundred Dollars in cash money, legal tender of the United States of America, and the said T. R. Kennedy refused to accept the money and refused to execute a deed to the complainant conveying the property to him"; that "complainant does now tender and pay to the Register of the Circuit Court of Tuscaloosa County, Alabama, the sum of" $8,900 "in cash money, legal tender of the United States of America, and does hereby exercise his rights and option to buy the above described property according to the terms of the said contract"; that "complainant is ready, able and willing to pay his portion of the said [ad valorem] taxes when the respondents have the amount of taxes calculated"; that complainant "is ready, willing and able to perform his part of the said contract, but the respondents have failed and refused to convey said property"; and that "complainant offers to do equity in all things."

■■ An option to purchase real estate is, by its nature, unilateral when entered into. However, when the option is exercised in accordance with its terms mutuality of obligation is created and the option becomes a binding contract of purchase and sale enforceable in equity by specific performance. Rice v. Sinclair Refining Company, 256 Ala. 565, 571, 573, 56 So.2d 647; Asbury v. Cochran, 243 Ala. 281, 283, 9 So.2d 887; Fuller v. Totten, 222 Ala. 174, 175, 131 So. 435; City of Anniston v. Alabama Water Co., 207 Ala. 497, 500, 93 So. 409; Blackburn v. McLaughlin, 202 Ala. 434, 436, 80 So. 818; Wilkins v. Hardaway, 173 Ala. 57, 58, 55 So. 817. See Code 1940, Tit. 9, Chap. 5, Specific Performance. And it has been held that the filing of a bill for specific performance within the time given for exercising an option constitutes an acceptance of it, thus ripening the option into a mutually binding contract of purchase and sale. Asbury v. Cochran, supra; Blackburn v. McLaughlin, supra. We find no

merit in the insistence that the option was not accepted by complainant in accordance with its terms.

This brings us, then, to the question whether the contract thus effectuated between the parties is one subject to specific performance.

This court, speaking through Chief Justice Stone in Alba v. Strong, 94 Ala. 163, 165, 10 So. 242, had this to say:

"The following propositions must be regarded as settled by the former decisions of this court beyond controversy: *First*. That to authorize the specific enforcement of an agreement to sell land all the terms of the agreement must have been agreed on, leaving nothing for negotiation. *Second*. That all the terms of the agreement, viz., the names of the parties, the subject-matter of the contract, the consideration and the promise, must be in writing, signed by the party sought to be charged, or by his agent thereunto authorized in writing. Code of 1886, § 1732 [Code 1940, Tit. 20, § 3, as amended by Act No. 645, appvd. Sept. 4, 1951, Acts 1951, Vol. II, p. 1109]. *Third*. That it is not essential that the paper evidence of the agreement be in any particular form, provided it contains the substance, as stated above. *Fourth*. That the written evidence of the terms of the agreement need not all be expressed in one paper. * * *"

From Alabama Central Railroad Co. v. Long, 158 Ala. 301, 304, 48 So. 363, 364, is the following:

"The general principle of law in respect to the remedy by specific performance of agreements for the sale of lands is 'that the equitable remedy rests largely in the judicial discretion, directed and regulated by defined rules. The contract must be just, fair, and reasonable, must be reasonably certain in respect to the subject-matter, the terms, and stipulations, and must be founded upon a valuable consideration.' (Carlisle v. Carlisle, 77 Ala. 339, 341; Moon's Adm'r v. Crowder, 72 Ala. 79; 4 Pom.Eq. § 1404); and the statute of frauds is offended unless the contract for the sale of lands expresses a valuable consideration and describes the subject-matter directly, or makes reference to something outside of the writing, by a resort to which certainty may be established. * * *"

Clearly, it seems to us, the agreement before us meets these requirements.

Appellants state in their brief that "much must be decided by negotiation," meaning, as we understand it, that some of the provisions of the agreement are left open for future treaty between the parties. In this connection, mention is made in appellants' brief of the provision in the option agreement for lending complainant an abstract of title. And it is stated that "the contract is silent as to the duty devolving upon the appellants to forthwith execute a warranty deed upon [being] given notice by the appellee." We do not think either of these is a matter left open for negotiation so as to prevent specific performance of the agreement. In the first place, the provision for lending an abstract was for the exclusive benefit of appellee which he could have waived. Surely, appellee's rights under the agreement could not be defeated by a refusal to lend the abstract. Then, too, the bill alleges that the abstract was, in fact, loaned to appellee, as provided in the agreement.

It is by no means clear to us what appellants have in mind in stating that the contract is silent with respect to the execution of a warranty deed. Following that statement, the brief recites: "Apparently, the only duty resting upon the appellants upon receipt of such notice was to lend an abstract one time." If by this it is intended to argue that the agreement contains no provision for making a conveyance, we must put it aside as being

without merit. Although there is no mention of a deed or conveyance in the agreement, we think it does impose, when considered as a whole, an obligation on appellants to "sell" the property to appellee.

An agreement to "sell" imports an agreement to execute an instrument passing title. As said in Asbury v. Cochran, 243 Ala. 281, 283, 9 So.2d 887, 889, supra:

"The general rule is that in the absence of stipulations to the contrary, every contract for the sale of real estate implies that a good title will be made. Kirkland v. O'Kelly, 218 Ala. 68, 117 So. 420; Baker v. Howison, supra [213 Ala. 41, 104 So. 239, 52 A.L.R. 1452].

"This applies to an executory contract for the purchase and sale of real estate and is given by law, and exists until the contract has been performed by the execution of a deed. When that is done the purchaser must rely on the warranty in his deed; and if there is none, the rule of caveat emptor applies. Cullum v. Branch Bank, 4 Ala. 21, 37 Am.Dec. 725; 27 R.C.L. 480, 481, section 196. It was said in Hunter v. O'Neil, 12 Ala. 37, that the 'right of the purchaser to a good title is a right not growing out of the agreement of the parties, but is given by law—that courts of equity govern their proceedings by this just rule, and when an incumbrance is discovered before the execution of the conveyance, the vendor must discharge it, whether he has or has not agreed to covenant against incumbrances.'

\*     \*     \*     \*     \*     \*

"In 27 R.C.L. 481, it is said: 'And it is held immaterial that the purchaser at the time of making the contract had knowledge of the existence of an incumbrance on the land,' citing Sibley v. Spring, 12 Me. 460, 28 Am.Dec. 191. That case was referring to a mortgage on the land, observing that the mortgage was payable before the purchaser

would have been entitled to a deed, and the court presumed that the vendor owing the mortgage debt intended to pay it before the time to make a deed to his purchaser. So that the requirement created by law that the vendor shall convey a good title was not under those circumstances affected by the knowledge by the purchaser of a mortgage on the land falling due before the time should come for the contract to be performed.

"\*   \*   \* The law will not raise up a duty contrary to the evident understanding of the parties as to their contract."

Paragraph 4 of the bill of complaint is as follows:

"4. There is a mortgage on the above described property, which was executed by T. R. Kennedy and his wife, Mildred S. Kennedy, to Virginia C. Duckworth on the 29th day of December, 1958, which mortgage is recorded in the Probate Office of Tuscaloosa County, Alabama, in Mortgage Book 737, on Page 135. The original amount of the mortgage was Seven Hundred Fifty and No/100 Dollars ($750.00). It was due and payable in monthly installments of Forty and No/100 Dollars ($40.00) beginning February 1, 1959. The Complainant has information to the effect that the balance is very small. The Respondent, T. R. Kennedy, stated at the time he executed the option that he would pay the balance of the said mortgage at the time of the closing of the transaction."

It seems to be appellants' position that these allegations operate as a conditional acceptance of the option. It is stated in brief that appellee "cannot on the one hand assert that he agreed to pay nine thousand and no/100 ($9,000) dollars in cash money for the property, and then on the other hand, say that by oral agreement, the purchase price was only eight thousand two

hundred and fifty and no/100 ($8,250) dollars." It is insisted that these allegations constitute "a conditional acceptance, or, at least, an incomplete consummation of the contract." We see no merit in this argument. We think it is answered sufficiently by the quotation from Asbury v. Cochran, supra.

The decree overruling the demurrer is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.