Edgar Jenkins, the plaintiff herein, brought this action for a declaratory judgment to determine if he is obligated to convey a parcel of land to the defendants, Nancy Jo Thrift, Sr., George Thrift, and Jessie Thrift, pursuant to a lease/purchase agreement dated September 6, 1976. The agreement extends to the Thrifts an option to purchase the subject property within the period of the lease. At trial, Jenkins claimed that he did not execute the lease/purchase agreement. The case was tried without a jury, and the trial court found that Jenkins did execute the agreement and that the Thrifts duly exercised the option to purchase. The court then granted the Thrifts' counterclaim for specific performance. We affirm.
The lease/purchase agreement reads as follows:
 "Now comes Edgar W. Jenkins and wife, Grace B. Jenkins; Landlord and owners: entering into a lease agreement with option to buy with the following: Nancy Jo Thrift, Sr., and George Thrift (son). The lease agreement is on property herein described. . ..
"[Description omitted.]
 "The terms of this lease and agreement are here-by stated.
 "1. Duration of this lease is for five years @ $50.00 monthly with option to buy at a fixed amount of $8,000.00.
 "2. There is also an option to renew this lease at end of 5 years @ $50.00 a month with option to buy at fixed amount of $8,000.00.
 "3. If option to buy is exercised . . . the previous monthly installments (starting at beginning of lease agreement) will be applied to the fixed amount of $8,000.00.
 "4. If the water well on said property breaks down, the lessees will pay for repairs and deduct said amount from the monthly payments.
 "5. It is here-by understood that this agreement with Jenkins, Ed. W., and wife Grace B. Jenkins is legal and binding upon their heirs; (the same as upon them)."
Before the lease/purchase agreement was executed, the Thrifts resided in their mobile home on the subject property under a verbal understanding with Jenkins. After the written agreement was executed, the Thrifts made permanent improvements on the property and paid Jenkins the $50.00 per month rent payments through May 1980. At that time, Jenkins refused to accept further payments.
On June 15, 1981, the Thrifts sent to Jenkins the following letter by certified mail, which he refused to accept:
 "Now comes Nancy Jo Thrift, Sr., and George W. Thrift, who hereby notify Edgar W. Jenkins and Grace B. Jenkins, landlords; that we, the above do hereby exercise the option to renew the lease described below; for it to continue on for another five years at $50.00 each month which will come to a total of $6,000.00; at which time $2,000.00 will be paid which will amount to $8,000.00 as agreed upon below."
The trial court held that the Thrifts exercised the purchase option by this letter and "further by asking this court for specific performance still within the time limitations set forth in the [o]ption."
In Kennedy v. Herring, 270 Ala. 73, 116 So.2d 596 (1959), this Court considered the legal implications of an option to purchase realty and wrote as follows:
 "An option to purchase real estate is, by its nature, unilateral when entered into. However, when the option is exercised in accordance with its terms mutuality of obligation is created and the option becomes a binding contract of purchase and sale enforceable in equity by specific performance. [Citations omitted.] And it has been held that the filing of a bill for specific performance within the time given for exercising an option constitutes an acceptance of it, thus ripening the option into a mutually binding contract of purchase and sale."
270 Ala. at 75, 116 So.2d at 598.
Properly viewed, the letter of June 15, 1981, is an exercise of the option to *Page 1280 
renew the lease, with an indication of the Thrifts' intent to exercise the option to purchase at the end of the five-year period. By filing the counterclaim for specific performance within the time limitations set forth in the agreement, however, the option was accepted and, thus, ripened into a mutually binding contract of purchase and sale enforceable in equity by specific performance.
Jenkins argues that Ala. Code 1975, § 8-1-41, prohibits specific enforcement of this purchase option. The statute reads in pertinent part as follows:
 "The following obligations cannot be specifically enforced:
". . .
 "(6) An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable. (Code 1923, § 6833); Code 1940, T. 9, § 55."
The document before us is not an example of careful legal drafting. Nonetheless, the following terms are clear from its face: The lease provides for a term of five years with an option to extend its duration for an additional five years; the purchase option is exercisable within the term of the lease; rent payments apply to the purchase price; and the purchase price is $8,000. We hold, therefore, that the purchase option is sufficiently certain and definite so that specific enforcement is not prohibited by § 8-1-41.
Alternatively, Jenkins argues that if the purchase option is specifically enforceable, Ala. Code 1975, § 35-4-76 (a), limits its duration to two years. Consequently, he argues, the option expired as a matter of law before the Thrifts attempted to exercise it. The relevant portion of § 35-4-76 (a) reads as follows:
 "Where the instrument creating any such option shall place no limit upon the duration of the option or otherwise state the terms controlling the duration of the option, the option shall cease to be enforceable two years after the time of its creation. This section shall not apply to options created prior to January 31, 1982."
The purchase option in this case is limited in duration to the term of the lease, a period of no more than ten years. It does not, therefore, fall within the two-year limitation of §35-4-76 (a).
When Jenkins entered into the lease/purchase agreement with the Thrifts, he owned a life estate in the property, and his daughter, Brenda Jenkins Hobby, owned the remainder interest. Hobby, upon motion of the Thrifts, was joined as a necessary party in this action.
Hobby conveyed her remainder interest to Jenkins. Jenkins asserts that this conveyance was ordered by the trial court. Further, Jenkins states in his brief that the conveyance is being held "in escrow, delivery of the deed to Plaintiff being contingent upon a final adjudication in this matter requiring Plaintiff to convey fee simple title to Defendants." Neither contention is supported by the record.
Indeed, the following exchange between counsel for Jenkins and the trial court reveals that the court did not compel the conveyance:
 "THE COURT: Isn't this the one where Mr. Jenkins only owned a life estate in the property?
 "MR. NELSON: At the time this agreement was allegedly entered into that's correct, Your Honor. We've obtained a conveyance from the remainder interest, from his daughter, so that there's no question now that Mr. Jenkins does in fact have title to the property."
On February 10, 1984, the trial court entered its final decree, which granted specific performance to the Thrifts conditioned on their payment of the balance of the purchase price to Jenkins within thirty days. This appeal was taken, and, on March 23, 1984, Jenkins filed a motion for an order to require that the money for the purchase price be deposited in court and placed in an interest bearing account. Jenkins claims that the court granted this order on May 18, 1984, and that the Thrifts *Page 1281 
are currently in default for failure to obey the order. There is nothing in the record, however, to indicate that the trial court entered this order or that the Thrifts are in default. Consequently, we cannot address this issue.
For the above stated reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.