I concur in the result, but I respectfully disagree with some of the rationale of the main opinion. As I noted in my dissent to the original opinion in this case, the elements of a contract are agreement, consideration, two or more contracting parties, a legal object, and capacity. Lawler Mobile Homes,Inc. v. Tarver, 492 So.2d 297, 303 (Ala. 1986). The main opinion now concludes that while the doctrine of mutuality of remedy does not apply to this case, it may apply to a contract of adhesion. However, even in a contract of adhesion, no rule of law requires that the remedies for a breach of contract be the same for both parties. This requirement of mutuality of remedies with respect to adhesion contracts creates an entirely new animal in Alabama contract law. As I have said before, this Court should be wary of creating new species.
The main opinion cites General Securities Corp. v. Welton,223 Ala. 299, 135 So. 329 (1931), for the proposition that this Court has previously adopted the doctrine of mutuality of remedy. In that case the plaintiff sought specific performance of a sale of corporate stock. The defendant argued that the plaintiff did not have a remedy in equity — specific performance — because he had an adequate remedy at law. This Court stated:
 "In determining the propriety of such a decree [ordering specific performance], the inadequacy of a legal remedy is a primary consideration. If the character of the property be such that the loss of delivery per the contract will not be fairly compensated in damages, based upon an estimate of its market value, the general rule is that relief may be had in a court of equity."
223 Ala. at 301, 135 So. at 330.
At that time courts of law and courts of equity were separate courts in Alabama. Today law and equity have been combined in Alabama's Unified Judicial System. See Rule 2, Ala. R. Civ. P. The usual remedy at law was and is money damages. Equity allows for a greater variety of remedies. For example, in GeneralSecurities, the corporate stock involved was that of a private *Page 1340 
corporation. The Court stated that normally the remedy for breach of an agreement to sell stock was money damages. However, the Court added that if the stock has no recognized market value, is not purchasable in the market, or has a value that is not settled but is contingent upon the future workings of the corporation, then the equitable remedy of specific performance may be appropriate. In other words, when the remedy at law is inadequate to make the complaining party truly whole, specific performance may be necessary. Specific performance is an equitable remedy that alleviates the problem of lack of mutuality of remedy; it is not the source of the problem.
The Court in General Securities quoted Pomeroy:
 " ' "Equity will not compel specific performance by a defendant, if after performance the common-law remedy of damages would be his sole security for the performance of the plaintiff's side of the contract." 3 Columbia Law Rev. 1, by Professor J.B. Ames. "The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches on plaintiff's part." This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality.' "
223 Ala. at 306, 135 So. at 335.
Let us compare that application of the doctrine to the case at bar. Under the agreement, Northcom has the option of demanding arbitration or filing a claim in court. Creative Broadcasting is limited to arbitration for a resolution of any dispute Creative Broadcasting has with Northcom. Creative Broadcasting agreed not to compete with Northcom within a certain geographical area and for a certain time. Creative Broadcasting filed a complaint against Northcom, alleging that it had failed to make the monthly installment payments, and Northcom filed a motion to compel arbitration, which the trial court denied. There are several questions we need to ask before this Court says that the doctrine of mutuality of remedy applies.
One, is arbitration a remedy? No. Northcom in this case did not ask the trial court for specific performance of the sale agreement as to the default in payment by Northcom. The final remedy desired by either party is not arbitration. Northcom asked the trial court to enforce a choice-of-forum clause in the sale agreement. Northcom's chosen forum is an arbitration panel. That is why Creative Broadcasting suffers no injustice if there exists a lack of mutuality; the arbitration clause has to do with the choice of forum, not the final remedy.
Two, is the remedy at law inadequate? In this case that question is inapposite. It points out the problem created by the main opinion's attempt to apply the doctrine of mutuality of remedy to arbitration clauses. The question whether the remedy at law is inadequate is the fundamental question a court must answer in deciding whether to apply an equitable remedy. See General Securities, supra; see also Kennedy v. Herring,270 Ala. 73, 116 So.2d 596 (1958); Moss v. Cogle, 267 Ala. 208,101 So.2d 314 (1958); Downing v. Williams, 238 Ala. 551,191 So. 221 (1939) (each of these cases cited in the main opinion upheld the enforcement of specific performance). Northcom seeks specific enforcement of a clause of the contract, not because the remedy at law is inadequate, but because the clause grants Northcom a choice. The question whether the remedy at law is inadequate is completely irrelevant. In fact, Northcom claims that it may in the future need relief from a court of law because an arbitrator is unable to enforce injunctive relief, a remedy that Northcom would need in the event Creative Broadcasting violated the noncompetition agreement and began operating a similar business. Northcom points out in its brief that only Creative Broadcasting agreed not to compete and that it was reasonable for Northcom to require specific enforcement of that provision. In contrast, Northcom, as the buyer, agreed only to pay money to purchase the radio station, so there was no need for Creative Broadcasting to seek injunctive relief by going to court.
Enforcing the arbitration agreement would not end the case. The parties would go before an arbitrator, who would determine an *Page 1341 
appropriate final remedy. Northcom is not seeking a final remedy in equity by requesting arbitration. An arbitrator does not have the authority to enforce a noncompetition agreement. If Northcom needed a remedy in equity, it would have remained in court, where Creative Broadcasting originally filed its complaint. Therefore, the main opinion's analysis of mutuality of remedy in the context of arbitration mixes apples and oranges. Ironically, it is Northcom that desires arbitration in this case. Northcom is the party that claims it would have an inadequate remedy through arbitration if it could not choose to go to court.
The reasoning of the main opinion actually would turn the doctrine of mutuality of remedy on its head. Instead of ensuring that parties have all the remedies they need to reach a mutually acceptable resolution of their conflict (which appears to be the philosophy underlying the doctrine of mutuality of remedy), the main opinion would cut off an equitable method of ultimately reaching that resolution. The doctrine of mutuality of remedy was meant to expand the possibilities of remedy for the parties; it was not meant to restrict them. In this case, both parties already have the ability to obtain specific enforcement of the arbitration provision. The main opinion says that, in the case of an adhesion contract, the court should take away the parties' right to this equitable remedy. That is what Alabama precedent says mutuality of remedy is all about — making sure that both parties can obtain the equitable remedy, if one of them demands it.
Even if the doctrine were not an anachronism, and even if it could be logically applied to an arbitration provision, the main opinion attempts to apply it much too broadly in this case. In Pierce v. Watson, 252 Ala. 15, 39 So.2d at 220 (1949), this Court qualified the doctrine:
 " 'It is now the generally accepted rule of both courts and text writers that in the absence of any statutory limitation, specific performance of a contract at the instance of one party will not be denied merely because of the fact that remedy by way of specific performance is not available to the party against whom the enforcement of the contract is sought.' 49 Am.Jur., Specific Performance, p. 50, § 36."
252 Ala. at 17, 39 So.2d at 221. The Pierce Court explained the doctrine:
 " 'All that this doctrine (of mutuality of equitable remedy) requires is that the situation of the parties be such that the court, in decreeing specific performance by the respondent, will have the physical power and ability to compel the complainant to perform his obligation and not be involved in complicated or extended business affairs or operations.' "
252 Ala. at 18, 39 So.2d at 221-22, quoting General Securities, supra, 223 Ala. at 305, 135 So. at 334.
If this analysis sounds confusing, it is because the doctrine of mutuality of remedy was never meant to apply to the situation that exists in this case — where a party to an agreement that allows a choice of forum is seeking to enforce the agreement. No one has been treated unjustly. No one has claimed that somehow an arbitrator's decision will leave them without an adequate remedy. Yet, from somewhere in the past, the main opinion calls up this doctrine, which does not apply anymore and which certainly does not apply to arbitration agreements, and uses it to say that perhaps at some time in the future there will be an adhesion contract to which it will apply.
The only explanation I can decipher for the reasoning of the main opinion is an unfounded assumption that arbitration always and inevitably results in an inadequate remedy for a party that does not want to arbitrate. The main opinion states that the doctrine of mutuality of remedy originated in equity. Equity courts originated as the ecclesiastical courts of the Church of England. Hundreds of years ago, there were many forums for the resolution of disputes within the legal tradition of England — King's Court, Court of Common Pleas, Chancery Court, Lord's Court, Merchants' Court, Town Court, Manorial Court, etc. Historically, there have been many ways for people to resolve their disputes with each other. Perhaps arbitration is an example of a new and growing diversity of means for resolving disputes, means that may prove advantageous to society. I hope *Page 1342 
this Court does not think that it and the other state-certified tribunals of Alabama are the only means by which the people of this State can resolve their disputes. Such a position would deny the variety of ways in which people have solved their disputes throughout history, including the history behind our own common law system. If it were true that only circuit court judges could resolve disputes, then we would be able to say with Job's "friends": "We are the people, and wisdom shall die with us."
Based on the above, I concur in the result.