William McIntosh and Winnie C. McIntosh a/k/a Penny McIntosh appeal from a judgment of the Baldwin Circuit Court in which the court declined to order specific performance of an option to purchase certain real estate ("the property") owned by Robert Livaudais and Donna Livaudais. Regions Mortgage, Inc. ("Regions"), cross-appeals arguing that if the judgment is reversed, the trial court's judgment determining that its cross-claims are moot should also be reversed. We reverse and remand as to the appeal; we also reverse and remand as to the cross-appeal.
 Relevant Procedural History
On December 1, 2004, the McIntoshes filed a complaint against the Livaudaises requesting, among other things, that the court enjoin the Livaudaises from interfering in the exercise of their option to purchase the property. On March 31, 2005, the Livaudaises answered the complaint. On August 15, 2005, the McIntoshes filed an amendment to their complaint requesting that the court order specific performance of the option to purchase. On August 23, 2005, the McIntoshes filed a second amendment to their complaint adding Regions as a defendant and requesting that the court declare the mortgage executed by the Livaudaises in favor of Regions void. On October 25, 2005, Regions answered the complaint and filed a cross-claim against the Livaudaises. Regions asserted that if the McIntoshes prevailed, then it would be entitled to a constructive trust or equitable lien upon the amount due the Livaudaises as a result of the sale of the property pursuant to the option and *Page 94 
to a judgment against the Livaudaises for any deficiency.
On May 2, 2006, the trial court held a hearing at which it received ore tenus evidence. On May 25, 2006, the trial court entered an order in favor of the Livaudaises on the McIntoshes' claim and on Regions' cross-claim. On June 13, 2006, the McIntoshes filed a motion for a new trial and a motion for a judgment as a matter of law. The McIntoshes' postjudgment motion was denied on July 12, 2006. On August 22, 2006, the McIntoshes filed their notice of appeal to the Supreme Court. On September 1, 2006, Regions filed its notice of appeal. The Supreme Court transferred the appeals to this court, pursuant to § 12-2-7, Ala. Code 1975.
 Facts
The Livaudaises purchased the property in 1992; at the time of the purchase, they executed a $60,000 mortgage. In 2000, the Livaudaises began making plans to move to Florida, and they began discussing the possibility of renting or selling the property to the McIntoshes, who were their friends at that time. At that time, the balance owed on the mortgage was approximately $20,000.
On June 3, 2000, the McIntoshes and the Livaudaises executed a contract stating:
 "For the premises at 2410 Choctaw Rd. in Fort Morgan at Gulf Shores. The monthly rental from 6-3-2000 will be $700. Each year following the amount of rent per month will be re-negotiated, not to exceed any addition more than $50 per month. On the first of the month, Penny McIntosh will deposit the monthly rental at Regions Bank into the Livaudaises' account. . . . Except, for any unseen act of nature as a hurricane, or such, the renters will be responsible for fixing anything that breaks. No deposit as breakage fees or any earnest money will be needed to rent the house. In the event that William and Penny McIntosh wish to purchase the home at 2410 Choctaw, the amount of rent in total they have paid will be subtracted from the selling price at $140,000. This lease is for five 5 years."
Robert Livaudais testified that at the time the parties executed the contract, there was an understanding that the McIntoshes were supposed to make a down payment toward the purchase of the property within the first year of the lease agreement. He also testified that the amount of the down payment had not been specified at that time but that, in his mind, the down payment was part of the parties' June 2000 agreement. Donna Livaudais also testified that she signed the June 3, 2000, agreement with the knowledge that the McIntoshes were going to make a down payment. She stated that Peggy McIntosh had informed her that her mother had a contract to sell her house and was planning on giving a portion of the proceeds to Peggy and that Peggy would then use that money to make a down payment on the property. Donna testified that the parties had all agreed that if the McIntoshes apprised them of the amount of the down payment, they would execute another contract. Robert Livaudais testified that approximately nine months after the June 2000 contract had been executed, Penny McIntosh promised him that the McIntoshes would make a down payment of $100,000 towards the purchase of the property.
Peggy testified that she had told Donna that if her mother sold her house, she was going to give the Livaudaises $20,000 as a down payment on the property. She testified that she had agreed to make a down payment when and if her mother gave her the money. Her mother, however, did not sell her house until December 2005. Peggy *Page 95 
testified that the discussion about the down payment had been very tentative and was not part of the June 3, 2000, agreement.
On June 1, 2001, the Livaudaises and William McIntosh signed a contract that stated:
 "To: Bill Penny McIntosh,
 "The rental fee for 2418 Choctaw in Fort Morgan, Al. Is $750.00 per month total for both upper lower units.
 "Before any visit to the property stated above — Bill or Penny will be notified by Robert or Donna Livaudais.
 "Last year, as per our conversation, there was no lump sum given towards the sale of the above property.
 "The upkeep of the property is the responsibility of the McIntoshes.
 "Each year a new contract will be issued, not exceeding $50 additional fee in rent."
Robert McIntosh testified that he believed that the June 1, 2001, contract made the June 3, 2000, contract null and void. Donna Livaudais testified that, in her opinion, after the June 1, 2001, contract was executed, there was no longer an option to purchase in effect but simply a month-to-month rental agreement.
In 2002, the Livaudaises refinanced the mortgage on the property in the amount of $140,000. Robert testified that the refinancing was necessary because the McIntoshes had failed to make the lump-sum payment that they had promised.
Each year thereafter, the rent amount increased by $50. On March 24, 2005, the McIntoshes attempted to exercise their option to purchase the property.
At the time of trial, the McIntoshes had lived on the property for six years and had paid rent regularly throughout those six years.
 Discussion
On appeal, the McIntoshes argue that the trial court erred by not ordering specific performance of their option to purchase the property. They contend that because they exercised the option within the five-year period specified in the June 3, 2000, lease agreement, the option ripened into a binding contract. The Livaudaises argue, however, that there was no meeting of the minds because they believed that they would receive a down payment from the McIntoshes during the first year of the lease; the McIntoshes assert that they did not believe that the down payment was required. Regions argues that the language in the June 3, 2000, lease agreement was ambiguous and that, considering the testimony, the trial court properly determined that a contract for the sale of the property was contingent on the McIntoshes making a down payment on the property.
 "Whether a contract is ambiguous is a question of law for the trial court. When its terms are clear and certain, the court has the duty to determine the meaning of the agreement. In order to ascertain the intention of the parties, the clear and plain meaning of the terms of the contract are to be given effect, and the parties are presumed to have intended what the terms clearly state. Extrinsic evidence may be admitted to interpret a contract only if the court finds that the contract is ambiguous."
Strickland v. Rahaim, 549 So.2d 58, 60 (Ala. 1989).
In the present case, we conclude that the June 3, 2000, contract was not ambiguous. The clear and plain meaning of the contract is that the McIntoshes had the option to purchase the property for $140,000, less the amount of rent paid, during the five-year lease term. See Jenkins *Page 96 v. Thrift, 469 So.2d 1278, 1280 (Ala. 1985) (construing option-to-purchase provision in a lease agreement as an option to purchase during the term of the lease). There is no language in the June 1, 2001, contract indicating that the parties intended to rescind the option-to-purchase provision in the June 3, 2000, contract. Because the June 3, 2000, contract was not ambiguous, the Livaudaises were prohibited from introducing evidence to contradict its terms.See Environmental Sys., Inc. v. Rexham Corp.,624 So.2d 1379, 1381 (Ala. 1993) ("[A]bsent some evidence of fraud, mistake, or illegality, a party to an unambiguous written contract cannot offer parol, or extrinsic, evidence of prior or contemporaneous oral agreements to change, alter, or contradict the terms of the contract.").
"`An option to purchase real estate is, by its nature, unilateral when entered into. However, when the option is exercised in accordance with its terms mutuality of obligation is created and the option becomes a binding contract of purchase and sale enforceable in equity by specific performance.'" Jenkins, 469 So.2d at 1279 (quotingKennedy v. Herring, 270 Ala. 73, 75, 116 So.2d 596,598 (1959)). In the present case, it is undisputed that the McIntoshes exercised their option to purchase within the five-year lease term. Therefore, the option became a binding contract that is enforceable by specific performance.[1] We have considered the application of Ala. Code 1975, § 35-4-76(a), to this case; however, based on Jenkins,469 So.2d at 1279, we must hold that the limitation period in that statute is not applicable to the present case.[2]
Accordingly, the trial court erred by failing to order specific performance of the option to purchase.
Based on the foregoing, we reverse the trial court's judgment and remand this case for further proceedings in accordance with this opinion. Because our reversal on this claim necessarily impacts the outcome of Regions' cross-claim, we also reverse the trial court's judgment on the cross-claim. On remand, the trial court is to also consider the merits of that claim.
APPEAL — REVERSED AND REMANDED.
CROSS-APPEAL — REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in the result, without writing.
[1] We conclude that "the purchase option is sufficiently certain and definite so that specific enforcement is not prohibited by § 8-1-41[, Ala. Code 1975]." Jenkins,469 So.2d at 1280.
[2] Section 35-4-76(a), Ala. Code, 1975, provides, in pertinent part: "Where the instrument creating any such option [to purchase an interest in land] shall place no limit upon the duration of the option or otherwise state the terms controlling the duration of the option, the option shall cease to be enforceable two years after the time of its creation." InJenkins, supra, the Supreme Court construed an option-to-purchase provision included in a lease agreement as extending through the term of the lease. Therefore, the Court held that the option to purchase did not "fall within the two-year limitation of § 35-4-76(a)." Jenkins,469 So.2d at 1279. Based on Jenkins, we must construe the option-to-purchase provision in the present case as extending through the five-year lease term; we must similarly conclude that the option to purchase in the present case does not "fall within the two-year limitation of § 35-4-76(a)."Jenkins, supra. *Page 97