Rel: October 18, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

––––––––––––––––––––––

### SC-2024-0077

––––––––––––––––––––––

### CBS Holdings, LLC

### v.

### Hexagon US Federal, Inc.

### Appeal from Madison Circuit Court
### (CV-21-900504)

COOK, Justice.

This appeal concerns a dispute over the interpretation of a commercial lease. The plaintiff below, Hexagon US Federal, Inc.

("HexFed"), leased a portion of a building. Later, the lessor of the building sold it to CBS Holdings, LLC. Thus, CBS Holdings became the lessor. A dispute later arose between the parties concerning the length of the lease and whether HexFed had validly renewed the lease for an additional term.

That dispute resulted in HexFed's filing suit against CBS Holdings, alleging that CBS Holdings had breached the parties' lease agreement by threatening to eject HexFed from the leased premises after it had renewed the lease. In response, CBS Holdings alleged various counterclaims against HexFed, asserting that the lease had terminated and that HexFed had not validly exercised its renewal option. Following a bench trial, the Madison Circuit Court entered a judgment in favor of HexFed on all claims. CBS Holdings appeals that judgment. For the reasons stated below, we affirm the trial court's judgment in favor of HexFed.

<u>Facts and Procedural History</u>

I. The 2015 Lease

In 2015, Intergraph Unimproved Properties, LLC ("Intergraph Unimproved"), and HexFed, formerly known as Intergraph Government

2

Solutions Corporation, entered into a commercial lease agreement ("the 2015 lease") for two "bay areas" -- Bay 202 and Bay 301 -- in a building located on Dunlop Boulevard in Huntsville.[1] That lease provided a five-year term for Bay 202 and a one-year term for Bay 301 and also stipulated the monthly rent for each term. The 2015 lease further provided separate renewal options for each bay -- specifically, two five-year renewal options for Bay 202 and four one-year renewal options for Bay 301.

## II. The 2016 Lease

In 2016, Intergraph Unimproved and HexFed executed an "AMENDED AND RESTATED LEASE AGREEMENT" ("the 2016 lease") in which the companies, among other things, "agree[d] to amend the description of premises and base lease term" in the 2015 lease.

The 2016 lease provided a five-year base lease term for both Bay 202 and Bay 301 and included a single renewal provision for both bays. However, it specified the rental rate for Bay 301 only for 12 months and indicated the maximum rental amount for that bay only for a 12-month

---

[1]Intergraph Unimproved and HexFed were related entities at the time they executed the 2015 lease.

3

term.

The 2016 lease also provided that, in the event of a breach, "[a]ll costs <u>incurred by either party</u> … <u>to enforce any provision of this [l]ease,</u> including[,] by way of example, <u>reasonable attorneys' fees</u> from the date any such matter is turned over to an attorney, <u>shall also be recoverable from the other party</u>." (Emphasis added.) It further permitted Intergraph Unimproved, or its assignee, to "accept from [HexFed] any payment or payments" if HexFed breached the lease without "waiving [its] right to exercise any right or remedy provided for by reason of any other existing or future breach." Finally, the 2016 lease required that "[a]ll notices by either party to the other shall be made by <u>depositing such notice with a nationally recognized overnight commercial carrier service</u> … and such notice shall be deemed to have been served on the date of its delivery by such carrier unless otherwise provided." (Emphasis added.)

The 2016 lease was negotiated and signed by Edgar Porter, a representative of Intergraph Unimproved, and Michael Barnett, a representative of HexFed. Although Porter did not recall the specific discussions pertaining to the different lease terms, he stated that he was unaware of any errors or misstatements in the 2016 lease.

Barnett assigned the task of reviewing the 2016 lease to Patricia Bahr, HexFed's Director of Contracts and Procurement at that time. Bahr explained that, although she did not recall having "any specific involvement" with the negotiations for the 2016 lease, Intergraph Unimproved and HexFed executed the 2016 lease, in part, to "put the [bays] on the same lease term." Bahr stated that HexFed "did not notice" that the 2016 lease provided the maximum rent for Bay 301 only for 12 months. She also stated that HexFed intended to pay the listed amount beyond the 12-month period.

### III. CBS Holdings Buys the Building Located on Dunlop Boulevard

On November 14, 2016, CBS Holdings purchased the building from Intergraph Unimproved, and the 2016 lease was thus assigned to CBS Holdings. At that time, HexFed began making its monthly rental payments for Bay 202 and Bay 301 to CBS Holdings.

More than two years later, on July 17, 2019, Randy Piechocki, one of the owners of CBS Holdings, emailed Bahr, stating, for the first time, that Bay 301 "had an initial term of 12 months, subject to a 90[-]day renewal notice." He continued, "CBS has[ not] received notice and as such the space is currently deemed to be on a month-to-month basis. Kindly

5

advise of [HexFed's] intention regarding this space." A few days later, HexFed's legal counsel at that time responded to the email, disputing Piechocki's characterization of the lease term: "The base lease term covering [Bays 202 and 301] is 5 years. … There are two 5-year renewal options that require 90 days advance written notice, but that notice is not yet due. … Therefore, no part of the leased space is rented on a month-to-month basis." Following additional correspondence, Piechocki eventually proposed an increased rental price for Bay 301, which HexFed rejected. Piechocki then sent HexFed a notice to vacate the premises.

It is undisputed, however, that HexFed did not vacate the premises, nor did it pay the increased rent. In fact, HexFed continued to occupy the leased premises at the rate provided in the 2016 lease. CBS Holdings did not take any action to eject HexFed. The parties operated in this manner for more than a year.

IV. The Parties' "First Amendment" to the 2016 Lease

On September 14, 2020, CBS Holdings and HexFed executed a "First Amendment" to the 2016 lease. In that amendment, the parties changed the identification of the lessee from Intergraph Government Solutions Corporation -- HexFed's former legal name used in the 2016

lease -- to Hexagon US Federal, Inc. -- HexFed's current legal name. They also increased the monthly rent for Bay 202 in exchange for the installation of certain receptacle outlets. The amendment to the 2016 lease concluded by stating: "All other terms and conditions remain the same."

Piechocki acknowledged that he had drafted that lease amendment with full knowledge that the parties disputed the lease terms provided in the 2016 lease. Nevertheless, the issues pertaining to the lease term were not discussed during the negotiations for the lease amendment. This apparently led Bahr to believe that those issues were resolved.

V. HexFed's Renewal of the Newly Amended 2016 Lease

On December 16, 2020, Bahr emailed Piechocki with a notice of HexFed's intent to renew the newly amended 2016 lease. After receiving no response, Bahr sent an additional email as well as a written notice via overnight commercial carrier, which CBS Holdings received on December 31, 2020. The written notice stated, in relevant part:

> "In accordance with the terms and conditions of the referenced lease agreement, … and the associated assignment letter, [HexFed] hereby provides timely notice to CBS Holdings, LLC of [its] <u>intent to exercise [its] first five-year renewal option</u> for the leased premises. [HexFed] <u>acknowledges and confirms that this will result in a two percent (2%) increase</u> in the rent

effective 1 April 2021 with a resulting 2% annual increase thereafter."

(Emphasis added.) HexFed's notice also included a schedule of the monthly rent that would be paid pursuant to the renewal, which provided incorrect amounts that were lower than the 2% increase provided in the 2016 lease. However, the notice also stated: "If your calculation differs due to rounding or other reasons, please let us know." Bahr acknowledged that, although she was unaware when she sent the notice, she had "made an error" when calculating the monthly rental amounts.[2]

That same day, CBS Holdings responded to HexFed, rejecting the renewal notice "by reason of incorrectly stating renewal rents, as well as other reasons." Therefore, CBS Holdings believed that HexFed's tenancy for Bay 301 ended on March 31, 2021.

On January 28, 2021, HexFed's new legal counsel, Matthew Moore, sent a letter to Piechocki. Moore argued that HexFed had exercised its renewal option. Moore "acknowledge[d] that both Intergraph [Unimproved] and HexFed mistakenly failed to align" the base lease term

---

[2]Although it is undisputed that the notice provided an incorrect calculation of the increased rent, HexFed has paid, at all times relevant to this appeal, the correct rental amount to CBS Holdings.

for Bay 301 -- which was amended to 5 years -- and the maximum-rent term -- which specified rent only for 12 months. However, Moore argued that, "[t]o the extent the mistake in aligning the 'Maximum Rent' provisions of the [2016] Lease (vs. the [2015] Lease) creates any ambiguity in the plain language of the Lease, it is beyond clear this was a mutual mistake by the original parties to [the] Lease."

Moore also acknowledged that HexFed had miscalculated the rent in the renewal notice and thus provided a corrected schedule of the monthly rental payments in accordance with the 2% increase. Finally, Moore explained that HexFed intended to continue occupying Bays 202 and 301 according to the terms of the renewal provisions in the 2016 lease.

In his response, Piechocki explained his position that "the attempted renewal notice was tantamount to an offer for a new lease on cheaper terms which is not provided in the original leasing agreement." Piechocki offered Bays 202 and 301 at a new rental rate -- which was approximately $8,000 more than the original rate with the 2% increase.

VI. The Present Action

On April 21, 2021, HexFed filed a complaint in the Madison Circuit

9

Court, seeking a judgment declaring that HexFed had validly exercised its option to renew the 2016 lease and that the rental rate for Bays 202 and 301 was, therefore, the amount from the 2016 lease with a 2% increase. HexFed also claimed that CBS Holdings had breached the 2016 lease by, among other things, breaching the covenant of quiet enjoyment contained in the 2016 lease. Finally, HexFed asked the trial court to reform the 2016 lease to correct any "scrivener's errors" left from the 2015 lease when the parties executed the 2016 lease and to award it costs and attorneys' fees pursuant to the 2016 lease.[3]

CBS Holdings answered and filed counterclaims against HexFed, asserting breach-of-contract, ejectment, and unjust-enrichment claims and seeking imposition of a landlord's lien pursuant to § 35-9-60 et seq., Ala. Code 1975. CBS Holdings alleged that HexFed had breached the 2016 lease by, among other things, "fail[ing] to pay the rent due under the [2016] [l]ease." Further, CBS Holdings alleged that HexFed's tenancy for Bay 301 had expired after 12 months under the 2016 lease and that, in the alternative, HexFed's tenancy for the entire premises had expired

---

[3]HexFed later amended its complaint to add a claim for a judgment declaring that it was not responsible for certain repairs on the leased premises.

on March 31, 2021, due to its failure to properly renew the lease. CBS Holdings sought damages and a landlord's lien for HexFed's use of the premises after the conclusion of the tenancy.

Following additional filings and proceedings, both HexFed and CBS Holdings filed motions for a summary judgment. After conducting a hearing on both motions, the trial court denied them.

On December 18, 2023, the trial court held a bench trial. Following that bench trial, the trial court entered a judgment in favor of HexFed on its claims against CBS Holdings. It also entered a judgment in favor of HexFed on CBS Holdings' counterclaims.

In support of its judgment, the trial court found that CBS Holdings had waived any right to argue that the 2016 lease had ended after 12 months based on the fact that CBS Holdings had accepted rent from HexFed for Bay 301 "between April 1, 2017 (CBS Holdings' … purported expiration date for Bay 301) and July 17, 2019," without objection. The trial court also found that, after disputing the lease term for Bay 301, CBS Holdings had executed the "First Amendment" to the 2016 lease without changing the lease term and had affirmed that "[a]ll other terms and conditions [of the lease] remain[ed] the same."

In addition to making the above findings, the trial court reformed the 2016 lease pursuant to § 8-1-2, Ala. Code 1975, establishing that "the maximum monthly rent defined in the [l]ease for Bay 301 did not expire after 1 year," and declared that "HexFed properly exercised its 5-year renewal term and is entitled to occupy the property through at least March 31, 2026." Finally, the trial court awarded costs and attorneys' fees incurred by HexFed in an amount to be determined in the future.[4] CBS Holdings appeals.

## Standard of Review

"When a trial court hears ore tenus testimony, '"its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust."' Fadalla v. Fadalla, 929 So. 2d 429, 433 (Ala. 2005) (citation omitted). But '"the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts."' Id.

---

[4]The trial court's failure to assess reasonable attorneys' fees at the time of the bench trial does not affect the finality of the trial court's judgment for purposes of the present appeal. Bento v. Bento, [Ms. SC-2023-0365, Mar. 22, 2024] ___ So. 3d ___, ___ n.6 (Ala. 2024) ("[A] trial court's failure to assess attorney's fees generally does not render a judgment nonfinal.").

The trial court later received evidence on HexFed's reasonable attorneys' fees and entered a judgment on the amount of those fees. That judgment has been appealed to this Court. This Court has issued a stay of that appeal pending the resolution of the present appeal.

(citation omitted). Further, '[i]f a contract can be interpreted without going beyond the four corners of the document, the trial court's resolution of the question of law is accorded no presumption of correctness, and this Court's review is <u>de novo</u>.' <u>Exxon Mobil Corp. v. Alabama Dep't of Conservation & Nat. Res.</u>, 986 So. 2d 1093, 1101 (Ala. 2007)."

<u>Lafayette Land Acquisitions II, LLC v. Walls</u>, 385 So. 3d. 519, 522 (Ala. 2023).

Discussion

CBS Holdings appeals the trial court's (1) determination that it waived its ability to argue that the 2016 lease provided a 12-month base lease term for Bay 301, (2) reformation of the 2016 lease on the ground of mutual mistake, (3) determination that HexFed properly exercised its right to renew the 2016 lease, and (4) award of costs and attorneys' fees to HexFed. We will address each argument in turn.

### I. Waiver

First, CBS Holdings contends that the trial court erred in finding that it had waived its right to argue that HexFed leased Bay 301 for a 12-month term. According to CBS Holdings, its execution of the "First Amendment" to the 2016 lease could not constitute a waiver because the amendment "reflects an intent that nothing other than what was expressly addressed in the First Amendment was to change," including

13

the 12-month maximum-rent provision. CBS Holdings' brief at 33. In response, HexFed argues that "CBS Holdings itself drafted and executed a lease amendment" without amending the base lease term and that "HexFed interpreted th[at] lease amendment as CBS Holdings' relinquishment of its arguments from the 2019 eviction attempt." HexFed's brief at 25.

A waiver is a "'voluntary and intentional surrender or relinquishment of a known right.'" Bentley Sys., Inc. v. Intergraph Corp., 922 So. 2d 61, 93 (Ala. 2005) (quoting Dominex, Inc. v. Key, 456 So. 2d 1074, 1058 (Ala. 1984)). The determination of whether a party has waived an issue is a question of fact. Horne v. TGM Assocs., L.P., 56 So. 3d 615, 624 (Ala. 2010).

Here, CBS Holdings contends that the 2016 lease term for Bay 301 ended on March 31, 2017 -- 12 months after the lease commenced on April 1, 2016. Despite that contention, however, the record shows that CBS Holdings drafted and executed the "First Amendment" to the 2016 lease -- after HexFed disputed CBS Holdings' interpretation of the lease and asserted its position that it had a five-year term for Bay 301 -- without attempting to change the base lease term set forth in that lease. CBS

14

Holdings then continued to accept HexFed's payments for its possession of Bay 301 for years, without further objection. Signing an amendment to a lease that one contends has ended and then continuing to accept payments under that lease is evidence of a "'voluntary and intentional surrender or relinquishment of a known right.'" Bentley Sys., 922 So. 2d at 93 (quoting Dominex, Inc., 456 So. 2d at 1058). Thus, CBS Holdings' argument here is illogical.

Taken together, these circumstances support the trial court's finding that that CBS Holdings waived its ability to argue that HexFed had a 12-month base lease term for Bay 301. We therefore conclude that the trial court's determination on this issue was not "'"palpably erroneous or manifestly unjust."'" Lafayette Land Acquisitions, 385 So. 3d at 522 (citations omitted). See also Lott, 501 So. 2d at 1198-99.

### II. The Trial Court's Reformation of the 2016 Lease Pursuant to § 8-1-2, Ala. Code 1975

Next, CBS Holdings argues that the trial court erred by reforming the 2016 lease under § 8-1-2, Ala. Code 1975, so that "the maximum monthly rent defined in the [l]ease for Bay 301 applied to all 5 years of the first 5-year rental term." According to CBS Holdings, that reformation was improper because (1) Bahr's testimony relating to

15

HexFed's intent when executing the 2016 lease was insufficient to justify reformation and (2) "HexFed called no witnesses from the other original party to the [2016] [l]ease to establish a mutual mistake, or other circumstance from th[e] statute, applied." CBS Holdings' brief at 34. In response, HexFed argues that there was testimony demonstrating that Intergraph Unimproved "intended to accept the defined … monthly rent for the full five-year term," which supports the trial court's reformation. HexFed's brief at 23.

Generally, a written contract is enforced by the plain meaning of its terms as they are expressed within the four corners of the document. Southland Quality Homes, Inc. v. Williams, 781 So. 2d 949, 953 (Ala. 2000). However, under § 8-1-2, a trial court has the authority to reform a written contract when certain circumstances exist:

> "When, through … a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value."[5]

---

[5]Notably, § 8-1-2 limits a trial court's authority to reform a written contract when it may "prejudice … the rights acquired by third persons in good faith and for value." However, CBS Holdings does not argue that this limitation applies here. We therefore see no reason to address it.

16

A mutual mistake occurs "when the parties have entered into an agreement, but the [contract] does not express what the parties intended under the agreement." Fadalla v. Fadalla, 929 So. 2d 429, 434 (Ala. 2005).

To reform a contract under § 8-1-2, "Alabama caselaw requires evidence of the intent of all parties to the instrument." Fadalla, 929 So. 2d at 435. See also Palmer v. Palmer, 390 So. 2d 1050, 1053 (Ala. 1980) ("Where it appears that by a mutual mistake of all parties the instrument does not conform to or express their intention …, relief may be had in equity against the other party to the conveyance …."). The trial court may consider parol evidence in determining the parties' intent. Brown v. Butts, 214 So. 3d 1181, 1190 (Ala. Civ. App. 2016).

Because HexFed sought the reformation of the 2016 lease in its complaint, it had the burden to "produce clear, convincing, and satisfactory evidence of what the parties actually intended the writing to express." Fadalla, 929 So. 2d at 435. Notably, the 2016 lease itself acknowledges that, by executing the document, HexFed and Intergraph Unimproved intended to change the term of the 2015 lease. Specifically, the 2016 lease stated: "Landlord and Tenant agree to amend the … base lease term; therefore, this Lease supersedes the [2015] Lease

Agreement." In fact, the 2016 lease actually amended the base lease term

from the 2015 lease and combined the renewal options for both bays:

| 2015 Lease | 2016 Lease |
|---|---|
| "Base Lease Term for premises noted in [Bays 202 and 301] shall be for a period of 5 years and 1 year respectively starting on the Commencement Date. | "Base Lease Term for premises noted in [Bays 202 and 301] shall be for a period of 5 years starting on the Commencement Date. |
| "…. | "…. |
| "[Bay 202] Renewal Options: Tenant shall have two (2) five (5) year renewal options exercisable by giving 90 days advance written notice to the Landlord.… | "Tenant shall have two (2) five (5) year renewal options for the Premises exercisable by giving 90 days advance written notice to the Landlord.…" |
| "[Bay 301] Renewal Options: Tenant shall have four (4) one (1) year renewal options exercisable by giving ninety (90) days advance written notice to the Landlord.…" | |

Thus, the 2016 lease itself constitutes evidence of the parties' intent to

amend the lease term for Bay 301 to a five-year period and supports the

18

trial court's finding of a mutual mistake.

CBS Holdings argues that the trial court's determination of HexFed's intent was incorrect because, although Bahr testified that HexFed intended to pay the defined maximum rent beyond 12 months, she also stated that she did not "recall any specific involvement" in the negotiation process for the 2016 lease. CBS Holdings' brief at 35. However, Bahr stated during the bench trial that, at the time HexFed and Intergraph Unimproved entered into the 2016 lease, she was responsible for "any review or implementation at HexFed that needed to happen under [the 2016] [l]ease," and Barnett testified that Bahr had been assigned the task of reviewing the lease on HexFed's behalf. Further, Bahr based her testimony on the written terms of the 2016 lease, which, as explained above, support the conclusion that HexFed intended to lease Bay 301 for five years.

CBS Holdings also contends that the trial court's determination of Intergraph Unimproved's intent is incorrect because Porter -- the representative for Intergraph Unimproved -- testified that he was unaware of any errors or mistakes in the 2016 lease, which, CBS Holdings asserts, indicates that Intergraph Unimproved expected to

19

receive the rent provided in that lease only for 12 months. However, as HexFed notes, Piechocki testified that CBS Holdings received the projected cash flows from Intergraph Unimproved when it acquired the 2016 lease, and those cash flows indicated that Intergraph Unimproved expected to receive the maximum rent, as defined in the 2016 lease, for the full five-year term. Therefore, the trial court's determination that Intergraph Unimproved intended for the 2016 lease term to continue past 12 months was not "'"palpably erroneous or manifestly unjust."'" Lafayette Land Acquisitions, 385 So. 3d at 522 (citations omitted).[6]

III. Renewal of the 2016 Lease

CBS Holdings also challenges the trial court's finding that HexFed properly renewed the 2016 lease. According to CBS Holdings, HexFed's renewal notice did not constitute a valid acceptance of its renewal offer because it "set forth the proposed rent schedule that was lower than the

_____

[6]CBS Holdings also argues that "[t]he Lease contained no agreed-upon rent after March 2017." CBS Holdings' brief at 35. Therefore, it argues, "[r]ent is a material term of a lease and without an agreement upon rent, a lease is too uncertain or indefinite to be enforceable." Id. (citing Muscle Shoals Aviation, Inc. v. Muscle Shoals Airport Auth., 508 So. 2d 225, 227 (Ala. 1987)). However, because CBS Holdings waived any right to argue that the 2016 lease ended after 12 months and the trial court validly reformed the lease to state a 5-year term, we need not consider this argument.

required rent." CBS Holdings' brief at 26. CBS Holdings argues that the incorrect rent schedule turned HexFed's "acceptance" into a "counteroffer," which CBS Holdings rejected. Id. at 23-27. In response, HexFed argues that its mistaken rent calculations could not invalidate its renewal because "the lease did not require HexFed to accurately recite its rent payments moving forward in order to effectively renew for a second term." HexFed's brief at 17.

"'It is well settled that lease agreements are contracts and that the general principles of contract construction apply in ascertaining the scope and meaning of a lease agreement.'" Horne, 56 So. 3d at 622 (quoting Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc., 873 So. 2d 1091, 1098 (Ala. 2003)). "A contract '"'must be given effect, if at all, according to its plain and inescapable meaning.'"'" Id. (quoting James A. Head & Co. v. Rolling, 265 Ala. 328, 338, 90 So. 2d 828, 836 (1956)).

Under the terms of the 2016 lease, HexFed had two options to renew the lease with CBS Holdings for additional five-year terms. "An 'option' is 'a promise that meets the requirements for the formation of a contract ….'" Ponder v. Lincoln Nat'l Sales Corp., 612 So. 2d 1169, 1171 (Ala. 1992) (quoting Restatement (Second) of Contracts § 25 (Am. Law

21

Inst. 1981)). "An 'option' to renew a lease on specific terms is a contractual right for the benefit of the holder of the option[,] and it binds the lessor who granted the option." Id.

HexFed argues that "[a]ll the [2016] lease required was '90 days advance written notice'" to exercise its right to renew. HexFed's brief at 17 (emphasis omitted). Viewing the plain language of the 2016 lease, this interpretation is correct: "Tenant shall have two (2) five (5) year renewal options for the Premises exercisable by giving 90 days advance written notice to the Landlord." (Emphasis added.) Here, HexFed delivered its written notice via commercial carrier to CBS Holdings on December 31, 2020, which undisputedly met the 90-day notice requirement.[7] Moreover, the notice specifically stated: "[HexFed] hereby provides timely notice to CBS Holdings, LLC of our intent to exercise our first five-year renewal option for the leased premises." Thus, under the terms of the lease, HexFed exercised its right to renew the lease, and CBS Holdings is

_____

[7]Although HexFed emailed CBS Holdings its intent to renew the lease on December 16, 2020, and December 29, 2020, those emails were ineffective notice under the terms of the 2016 lease, which requires that "[a]ll notices by either party to the other shall be made by depositing such notice with a nationally recognized overnight commercial courier service."

therefore bound by that renewal. See Ponder, 612 So. 2d at 1171; City Garage & Sales Co. v. Ballenger, 214 Ala. 516, 518, 108 So. 257, 259 (1926) ("The tender by the lessee of a renewal … conforming to the terms of the option[] … was an exercise of the option, entitling him to specific performance in equity upon refusal of the lessor to execute the renewal lease.").

HexFed's improper calculation of the rent did not void its renewal. The 2016 lease stipulated a 2% increase in the base rent, but that 2% increase applies only "[i]f [HexFed] exercise[d] its option to renew the Lease for a renewal term." By its terms, that provision does not impose an additional requirement with respect to the renewal notice; rather, it enables the parties to enforce the 2% increase if the lease has been renewed.[8]

_____

[8]At trial, Piechocki explained that he believed that CBS Holdings would have been "locked in" to the incorrect amounts set forth in the schedule provided by Bahr if he had accepted the renewal notice. However, we note that HexFed was also bound by the renewal option. See Jenkins v. Thrift, 469 So. 2d 1278, 1279 (Ala. 1985) ("'[W]hen [an] option is exercised in accordance with its terms mutuality of obligation is created and the option becomes a binding contract ….'" (quoting Kennedy v. Herring, 270 Ala. 73, 75, 116 So. 2d 596, 598 (1959))). Thus, if HexFed had attempted to pay less than the 2% increase provided in the lease, CBS Holdings could have enforced the renewal option and demanded the correct payments.

Because HexFed sent written notice of its intent to renew the 2016 lease via a commercial carrier in accordance with the 90-day notice requirement, the trial court did not err in finding that HexFed had exercised its renewal option. Therefore, the trial court's judgment in favor of HexFed on its claims and on CBS Holdings' counterclaims was not "'"palpably wrong or manifestly unjust."'" Lafayette Land Acquisitions, 385 So. 3d at 522 (citations omitted).

IV. Costs and Attorneys' Fees

Finally, CBS Holdings argues that the award of costs and attorneys' fees in HexFed's favor is due to be reversed and that, instead, the trial court should have awarded such costs and fees to CBS Holdings. It argues that it "is entitled to recover attorneys' fees incurred in enforcing the Lease" because (1) "HexFed's right to occupy Bay 301 expired as of March 31, 2017," and (2) the 2016 lease in its entirety "expired on March 31, 2021." CBS Holdings' brief at 45-46. In response, HexFed argues that the trial court's award of costs and attorneys' fees in its favor was proper because it was "'forced to file this action'" due to CBS Holdings' rejection of its lease renewal. HexFed's brief at 29.

Generally, "a prevailing party in litigation is not entitled to an

24

award of attorney fees unless those fees are provided for by statute or by contract or if they are otherwise justified for certain equitable reasons." Guardian Builders, LLC v. Uselton, 154 So. 3d 964, 970 (Ala. 2014). Here, § 10.3 of the 2016 lease provides for the recovery of costs and attorneys' fees:

> "All costs incurred by either party in connection with collecting any amounts and damages owing by the other party pursuant to the provisions of this Lease or to enforce any provision of this Lease, including by way of example, but not limitation, reasonable attorneys' fees from the date any such matter is turned over to an attorney, shall also be recoverable from the other party."

(Emphasis added.) Pursuant to this provision, the trial court awarded HexFed attorneys' fees "[b]ecause HexFed was forced to file th[e] action" after CBS Holdings "rejected" its renewal and sought to impose higher rental rates than the 2% increase provided by the renewal provision in the 2016 lease. As explained above, HexFed's initiation of this litigation was an effort to enforce the lease, which is covered by § 10.3, and HexFed has been successful. Therefore, the trial court's award of costs and attorneys' fees to HexFed was proper.

## Conclusion

Based on the foregoing, we affirm the trial court's judgment in favor

25

of HexFed on its claims against CBS Holdings and on CBS Holdings' counterclaims against it. We also affirm the trial court's award of costs and attorneys' fees to HexFed.

AFFIRMED.

Parker, C.J., and Shaw, Wise, Bryan, Stewart, and Mitchell, JJ., concur.

Sellers and Mendheim, JJ., concur in the result.